New York Dock Company, Inc., Plaintiff, *v.* Harold G. McCollum and Others, Defendants.

Supreme Court, Onondaga County, July 19, 1939.

*Kobbe, Thatcher, Frederick & Hoar* [*Karl T. Frederick* of counsel], for the plaintiff.

*Davies, Auerbach & Cornell* [*Martin A. Schenck* of counsel], for the defendants Harold C. McCollum, David L, Tilly, Robert W. Dowling, Richard L. Morris, Charles E. Hotchkiss, Douglas Gibbons and Clifford E. Hicks.

*Miller, Owen, Otis & Bailly,* for the defendant Albert H. Wiggin.

*Wrenn & Schmid,* for the defendant Robert E. Dowling.

*White & Case,* for the defendant Darragh A. Park.

*Beekman, Bogue, Leake, Stephens & Black,* for the defendant Richard L. Morris.

*Edward V. McKeown,* for the defendant Neal D. Becker.

LEONARD C. CROUCH, Official Referee. The complaint in substance alleges that in 1933 one Lawrence J. Gallagher, a stockholder of the New York Dock Company, Inc., brought a derivative and representative stockholder's action against the defendants hereinabove named and others, and that the plaintiff herein, the New York Dock Company, Inc., was made a party defendant in that action; that the complaint in that action sought to charge the defendants herein with liability for alleged injuries and losses aggregating $11,000,000 suffered by the New York Dock Company, Inc., of which the defendants herein were directors, growing out of alleged violations of their duties as such directors; that the defendants herein (excepting the defendants Smith and Gibbons) appeared in that action by various attorneys and served answers; that the New York Dock Company, Inc., also appeared therein by its attorney and served an answer resisting the demand for the appointment of a receiver for itself and for its subsidiary, New York Dock Trade Facilities Corporation; that the trial of said action was had in 1935 and resulted in a decision denying a receivership and dismissing the complaint on the merits as to all issues except one, and dismissing as to that one for failure of proof; that an appeal to the Appellate Division from the judgment entered on the decision was subsequently dismissed for lack of prosecution, and that action is now wholly ended.

The complaint herein then further alleges that each of the defendants has demanded that the plaintiff herein, New York Dock Company, Inc., pay the sums of money paid or contracted to be paid respectively by them in connection with their defenses as individual defendants in the stockholder's action for the services of attorneys and for other charges and disbursements incident thereto, aggregating, exclusive of interest, $86,755.14; and that the plaintiff, being in doubt as to its rights and obligations in respect thereto, has refused to pay said sums, and, to save a multiplicity of suits, prays for a declaratory judgment adjudging that the plaintiff is not legally obligated to pay and may not properly pay the same or any part thereof or indemnify the defendants against such expenses.

As the referee reads their briefs, it is the contention of the defendants (upon whom the burden probably rests to sustain the claims asserted by them) that (1) there is an implied legal obligation on the corporation to pay the reasonable expenses of its directors whenever, in a stockholder's representative derivative action, they successfully defend themselves; (2) in any event, when such successful defense has served in some substantial way to benefit the corporation, there is sufficient justification in equity so that it may safely pay the reasonable legal expenses of its directors; and (3) the successful defense of the defendants here in the stockholder's action did serve in a substantial way to benefit the corporation.

As a background for the brief discussion of these points it is well to have in mind two principles, based on social necessity or policy, which have been long recognized and applied: (a) Ordinarily the successful party in litigation is not reimbursed for his counsel fees and other expenditures; but (b) when a party to a litigation creates, increases or protects a fund or property for the benefit of a class, he is ordinarily entitled to have his lawyers compensated and similar expenses paid from the fund or property.

1. The phrase " legally obligated," as used in the pleadings, seems to have been taken by the defendants in their briefs as meaning a strict technical obligation in law based upon an implied contract that whenever a director successfully defends himself in a representative derivative action, he is entitled to reimbursement for his expenses entailed by the litigation, regardless of any other fact or circumstance. If that be the meaning of the phrase, the referee is unable to agree with the defendants' first contention as stated above. The only case cited as direct authority is *Figge* v. *Bergenthal* (130 Wis. 594; 110 N. W. 798). That was the original action and one of many acts of defendant found by the trial court to have been wrongful was the payment of corporate funds made during the progress of the action to defendants' attorneys. All that the Supreme Court, in the course of a long opinion reversing the judgment below, said upon the point was this (at p. 625): " 7. Respecting the payment of attorney's fees out of corporate funds in the defense of this action little need be said. Clearly, if no case is made against defendants *it is not improper or unjust* that the corporation should pay for the defense of the action." (Italics supplied.)

At best this is dubious authority. The language is that of the chancellor using his discretion, not that of a court of law enforcing an inherent right or contract.

Certain analogies are urged in support of the contention: (a) Upon the assumption that the relationship of directors to a corporation

is that of agent and principal, cases in plenty are cited for the rule that an agent may recover any expenditures necessarily incurred in the transactions of his principal's affairs, when he acts within the scope of his authority; and it even has been said that this right rests upon " the implication of a contract of indemnity." (*Brown* v. *Mechanics & Traders' Bank*, 16 App. Div. 207, 209.) (b) Again, upon the assumption that the relationship is that of trustee and beneficiary, it is pointed out that there are many cases where the trustee, upon a faithful execution of his trust, has been indemnified for expenses necessarily incurred, including allowance for counsel fees and legal services. (c) Still, again, cases are cited where receivers have been allowed their legal expenses in litigations arising out of an honest endeavor to discharge their duties as officers of the court.

Except, possibly, in the case of principal and agent, the rule of indemnity in the analogies above referred to seems to be a rule of guidance rather than a rule of law. Whether or not it is to be applied in a particular case seems to rest in the sound discretion of the court in view of all surrounding facts and circumstances. So far as the case of principal and agent is concerned, the analogy is not close enough to prevail alone. In spite of casual language in many opinions, a director of a corporation is not an agent either of the corporation or of its stockholders, except in a convenient rhetorical sense, though he may sometimes act in the nature of an agent in dealing with third parties. (Cf. *Mabon* v. *Miller*, 81 App. Div. 10.) He derives his powers and authority neither from the stockholders nor from the corporation. His status is *sui generis*. His office is a creature of the law.

The conclusion of the referee is that there is no legal obligation in the strict technical sense contended for by defendants.

2. But is there a " legal obligation " in the wider sense of one which, on application to the court, based upon equitable considerations, would be given judicial sanction and would be enforced by appropriate process? An answer to that question will, in effect, be an answer to the second contention of the defendants mentioned above.

There is no doubt at all that where the stockholder in the representative action is successful he is almost invariably reimbursed for reasonable litigation expenses out of the recovery. That is done under the exception to the general rule relating to such expenses mentioned above. Equally invariably in such instances the defendant directors are not reimbursed. So, when the stockholder fails he is not reimbursed. Many authorities sustaining the foregoing statements may be found in the footnotes to an article entitled

" The Counsel Fee in Stockholders' Derivative Suits " (39 Col. L. Rev. 784, May, 1939). Judicial authority on the remaining question of whether, when the plaintiff stockholder fails and the defendant directors succeed, the latter may be reimbursed is scarce. In *Figge* v. *Bergenthal* (*supra*) they were allowed their litigation expenses without discussion because the court thought that it " was not improper or unjust " that the corporation should pay. The corporation was a small one in which the defendants and their family connections owned a large majority of the stock. At a stockholders' meeting they had authorized the disputed payments. In the end, even though the corporation paid, all but a fraction of the expense came out of their pockets.

The only other case which has been found dealing directly with the question is *Griesse* v. *Lang* (37 Ohio App. 553; 175 N. E. 222 [1931]). There, as here, it was urged that the directors were trustees or agents for the corporation and that the payment of counsel fees by the corporation for the successful defense of the directors in the stockholder's action could be justified as having been incurred in defense of the trust or corporation and for its benefit. The court was of the opinion that there was nothing to show that any interest of the corporation had been conserved or that the corporation had received any benefit from the expenditure, and hence it was unauthorized and illegal.

There is more or less text book and extra-judicial commentary on the question, accepting for the most part the view of the court in the *Griesse* case. (5 Cook on Corporations [8th ed.], § 879, p. 4083; 14-A C. J. § 1873, p. 109; 43 Yale L. J. 661, 663; 16 Minn. L. Rev. 102 [case note on the *Griesse* case]; 39 Col. L. Rev. 784. *Contra*, 27 Ky. L. J. 1.) In the Columbia Law Review article the author thus states his conclusions (at p. 816): " The same reasons which justify an allowance out of the fund in favor of the complainant stockholder for expenses incurred in recovering it require the disallowance of compensation for expenses incurred by directors or other individual defendants defending suits against them for waste of corporate funds, whether they be successful or unsuccessful. Although the corporation is a nominal defendant, the proceedings of the individual defendants are not for the purpose of recovering or saving a trust fund, and it would be a travesty of justice were the corporation permitted to pay the expense of defending a suit instituted by minority stockholders for its benefit."

The upshot of the matter appears to be this: " Liability to suits * * * is considered a risk attendant on directorships, to be assumed together with the more compensatory features of that

office." (43 Yale L. J. 663.) It is exactly like the risk assumed by an officer of a municipal corporation. In *Matter of Chapman* v. *City of New York* (168 N. Y. 80) Judge VANN had this to say (at p. 86): "When a citizen accepts a public office he assumes the risk of defending himself against unfounded accusations at his own expense." But if a director can clearly and persuasively demonstrate to the court upon an application for reimbursement or when called upon to refund corporate money already received by way of reimbursement, that in conducting his own defense successfully he has conserved some substantial interest of the corporation which otherwise might not have been conserved, or has brought some definite benefit to the corporation which otherwise might have been missed, the court may direct or confirm reimbursement, as the case may be. Just how such a state of facts can come about, however, is not very clear to the referee. The corporation is always a party defendant in a stockholder's derivative action. If it is a nominal defendant, as it is in most cases, it stands to be benefited only if the plaintiff wins. If it is something more than a nominal defendant, then, as in the instant case, where a receivership was asked, its interests are being looked after by its own counsel, who in such a case can be properly employed and properly paid out of corporate moneys. (*Godley* v. *Crandall & Godley Co.*, 181 App. Div. 75, 78; affd., 227 N. Y. 656.)

Nevertheless, since one cannot foresee all possible factual patterns, the referee is disposed to think that there may be a " legal obligation," in the wider sense defined above, and that in such a case the corporation may pay the reasonable expenses of its directors.

3. The referee is unable to agree with the third contention of the defendants to the effect that a substantial benefit accrued to the New York Dock Company, Inc., from the successful defense made by them in the stockholder's action. The defendants' argument here rests largely on the assumption that the plaintiff stockholder, in addition to attacking the directors, also attacked the corporation itself; indeed, there is an implication that the real and essential attack was directed at the corporation and that the successful defense of the directors individually was merely incidental to the successful defense of the corporation. This assumption rests upon the language used in various isolated allegations of the complaint in the stockholder's action and upon the demand in the prayer for a receivership. The complaint was long and diffuse, after the fashion of ancient bills. (Cf. *Gutta Percha & Rubber Mfg. Co.* v. *Holman*, 150 App. Div. 678.) But its objective as a whole was unmistakable. The sins alleged were the sins of the directors against the corporation, consisting of alleged conspir-

acy, waste, negligence, mismanagement and illegal payments of dividends. Obviously, the receivership was asked for merely as an incidental matter in possible aid of the essential relief demanded against the directors and in favor of the corporation. But, even if the almost impossible cause of action suggested by defendant's argument (an action against the corporation in favor of the corporation) was pleaded, the corporation was in court represented by its own separate counsel, and the referee is unable to understand why either the corporation or its counsel should have been embarrassed in looking after its defense because of the form of the action. If in truth the corporation was attacked it could defend even though plaintiff said the suit was for its benefit. Apparently that is exactly what it did do as far as it was attacked at all.

There are one or two incidental points which may be briefly considered. On the hearing counsel for the defendants earnestly pressed to the referee's attention the argument of social necessity for indemnification of corporate directors. It was said in substance that, unless the rule of indemnity contended for was sustained or established, corporations would find it difficult to induce responsible men to act as directors. In view of what the referee deems the settled rule to be, as stated above, he can give no weight to that argument. But he calls attention to the following views of Prof. (now Mr. Justice) WILLIAM O. DOUGLAS, expressed in the course of his rather well-known article, " Directors Who Do Not Direct " (47 Harv. L. Rev. 1305–1328): " The enforcement of these obligations of trusteeship has two aspects. In the first place, there is the small and isolated investor who needs adequate opportunity for protection against the managers or the board. In the second place, there are the managers and the board who need effective protection against the blackmailer or striker, lest the risks attendant to those business positions prove to be too onerous. Making it easier for the legitimate plaintiff and harder for the illegitimate is a problem which will never be wholly solved, but some progress can be made. In one form or other it means granting to trial courts greater discretion. It involves extensive re-examination and refashioning of procedural devices to admit of more specialized treatment of these types of cases. In some instances it may mean the shifting of the onus of proof. * * * Or it may mean revisions of rules on interlocutory motions and appeals in interlocutory proceedings. Or it may mean greater control over examinations before trial, over motions for stay, dismissal or consolidation of stockholders' suits. And it certainly would embrace a reconsideration of the control over costs or security for costs.

These are but a few examples, but they show the range and nature of the inquiry necessary for adaption of procedural devices to the various types of situations giving rise, on the one hand, to the issue of responsibility of officers and directors and, on the other, to the need of protecting them against impossible risks and burdens which perverted use of the enforcement machinery would entail."

Finally, assuming a case where there may be a right to reimbursement, there is some question as to when, where and how that right is to be asserted and determined. In stockholders' actions where the plaintiff has been successful the almost universal practice has been to apply for and secure reimbursement in the original action. The same practice should ordinarily be followed by successful defendants. Obviously, the trial judge is in a much better position than any other judge to evaluate the alleged benefits to the corporation of the legal services rendered. But there are some cases holding that the claim may be by separate action. The referee is not disposed to decide the case at bar on a procedural point. For a discussion of pertinent procedural matters see 39 Columbia Law Review, at pages 804 *et seq.*

Submit findings and proposed judgment accordingly not later than July 31, 1939. It is suggested that counsel, if possible, agree on one set except as additional or different findings are requested.