## MOONEY v. WILLYS–OVERLAND MOTORS, Inc.

### No. 10910.

United States Court of Appeals
Third Circuit.

Argued Feb. 6, 1953.

Decided June 8, 1953.

David F. Anderson, Wilmington, Del., Berl Potter & Anderson, Wilmington, Del., for appellant.

James R. Morford, Wilmington, Del., Morford, Bennethum, Marvel & Cooch, Wilmington, Del., for appellee.

Before BIGGS, Chief Judge, and GOODRICH and KALODNER, Circuit Judges.

BIGGS, Chief Judge.

The plaintiff, James D. Mooney, a New York citizen, brought suit in the court below against Willys-Overland Motors, Inc., a Delaware corporation, claiming $11,586.-63 under a contract which provided for the reimbursement of Mooney for litigation expenses incurred in two previous law suits in which Mooney, at the time the contract was made, was named as a defendant. Jurisdiction in the instant case is based on diversity of citizenship and the amount in controversy. The complaint at bar set out the pertinent section of the contract[1] and alleged a breach by the defendant. The defendant's answer admitted the making of the contract but denied that anything was due under its provisions. The complaint also asked for costs, expenses and counsel fees of $5,000, alleging

1. For the text of this agreement and the surrounding circumstances, see the statement of facts *infra*.

that this last amount must be considered as further litigation expense arising out of the two litigations in which Mooney had been named as a defendant. The court below gave judgment for Mooney for the principal amount claimed under the contract less $267.32 conceded by Mooney to be due the defendant on a counterclaim, but denied the $5,000 counsel fee in this action. D.C., 106 F.Supp. 253. On reargument, costs and interest were also awarded the plaintiff in the amount of $2,005.40.[2] Willys appeals from the orders of the court below. Mooney has filed no cross appeal and the denial of the additional counsel fee is not before us.

The relevant facts are complex. We will present them chronologically.

On August 30, 1948, Krinsky, a minority stockholder of Willys-Overland Motors, Inc.,[3] commenced an action in the Chancery Court of Delaware naming as defendants that corporation itself, two other corporations—Empire Securities, Inc. and Willys Real Estate Realization Corporation—and certain individuals identified as directors and officers of Willys. Mooney at that time was both president and a director of Willys; he was among those named in Krinsky's complaint. On November 12, 1948, an identical complaint was filed by Krinsky in the United States District Court for the District of Delaware.

The Krinsky complaints charged that from January 1946, to date all of the outstanding stock of Empire Securities, Inc. had been owned, directly or indirectly, by Mooney and two others, Canaday and Ritter who were also named as defendants. That during the same period Empire in turn owned all the stock of Willys Real Estate Realization Corporation and of Willys Overland Branches, Inc. That through Realization and Branches, Empire owned approximately 31% of the common stock of Willys-Overland Motors, Inc. That Mooney, Canaday and Ritter thus controlled "the board of directors and the officers of Willys in such manner

that the other members of the Board were subservient to their wishes without regard to the best interests of the Corporation." That Mooney, Canaday and Ritter, in conspiracy with the directors of Willys, committed the following wrongs, thereby wasting Willys' assets:

(1) The 1945 purchase by Willys from the Wilson Foundry & Machine Company, a wholly owned subsidiary of Realization, of unnecessary tools and equipment at an excessive price;

(2) The 1946 purchase by Willys from Realization of all the stock of Wilson at an excessive price, thereby acquiring for Willys useless plant and equipment;

(3) The 1946 purchase by Willys from Realization of certain unnecessary real estate at an excessive price; and

(4) The 1944 employment of Charles E. Sorensen as president of Willys for 10 years at a salary of $1000 a week with extremely favorable stock option privileges, followed by the continuation, after rightfully causing Sorensen to resign as president in 1946, of the same salary and privileges.

The Krinsky complaint further alleged the futility of a demand that Willys bring the action, because of the domination of the board by Mooney, Canaday and Ritter. Krinsky demanded judgment "requiring the defendants herein jointly and severally to account to Willys for the profits, proceeds and emoluments derived and received by them or any of them, and for the losses sustained by Willys, directly and indirectly, by reason of the transactions herein alleged." He also sought to rescind Sorensen's contract and to enjoin further payments or the issuing of stock under it, and such other relief as might be just and proper under the circumstances.

On August 31, 1948, immediately after the filing of Krinsky's complaint in the Delaware Chancery Court, Mooney engaged Mr. James B. Alley of New York to represent him. Although Mooney had

---

2. No opinion was reported for publication.

3. Except when the full name is given, this corporation is hereinafter identified simply as "Willys."

not been served with process in Krinsky's action, it was his purpose to enter an appearance and to defend on the merits in order to protect his reputation in the business world. With this purpose in mind Alley prepared the case for trial. Part of this work was performed independently of and part in cooperation with counsel for the other defendants, both corporate and individual. Like Mooney, the other individual defendants were not served with process. At least two of them, Love .and Sorensen, also engaged counsel.

Willys and Realization then filed answers to Krinsky's complaint in the Delaware Chancery Court, denying the charges and stating broadly that the directors' actions were at all times taken voluntarily and in the best interests of Willys. In December, 1948, Krinsky amended his complaint to allege conspiracy between Mooney, Canaday, Ritter, Empire, Realization and the then directors of Willys in committing the wrongs complained of, and to change the date of the alleged wrongful purchase of tools and equipment from Wilson from 1945 to 1946. In March, 1949, Krinsky rewrote his complaint completely. This amended complaint was substantially the same as the original complaint except that the cause of action based on Sorensen's contract was withdrawn.[4]

On May 20, 1949, Mooney and Willys entered into the contract upon which the plaintiff relies, at least in part, in the instant case. This contract terminated Mooney's employment with Willys and purported to settle various differences between Mooney and Willys. Mooney agreed to resign all his offices and to regard as satisfied all his claims against Willys "except sums payable pursuant to the terms of this agreement." Willys agreed to purchase Mooney's home in Toledo, Ohio, to pay Mooney's expenses in moving his furniture from Toledo to New York, to pay Mooney's salary until January 15, 1950, to pay certain other expenses incurred by

Mooney at the time of his employment by Willys, and to pay a previous lawyer's bill (Alley's) rendered to Willys and to compensate Alley for services in connection with the May 20th settlement. Paragraph 7 of the contract of settlement provided: "Willys-Overland agrees to indemnify Mooney in accordance with the provisions of Article XXIII of the By-Laws in connection with expenses incurred by him arising out of suits now pending in the Delaware Chancery Court and in the United States District Court of Delaware against Willys-Overland Motors, Inc., Empire Securities, Inc. and Willys Real Estate Realization Corporation, in which certain directors of Willys-Overland Motors, Inc. are named as defendants."

It is around paragraph 7 that the dispute in the instant case centers. The circumstances which bear on the interpretation of this paragraph are these: At the time the contract of settlement was approved by the Willys board of directors, no suggestion was made that Mooney was not reimbursable for his counsel fees, although the board had known since about August 31, 1948, that Mooney had retained Alley to represent him. In fact, on September 21, 1948, Willys' general counsel, Ritter, had told Alley that Mooney had informed the board of Alley's employment and that "of course it would be reimbursable expense to Mr. Mooney under the by-laws." On April 26, 1949, Ritter had further suggested to Alley that Mooney include the cost of transcripts taken in the Krinsky case in his claim for reimbursement from Willys. Later, on June 23, 1949, Willys wrote Mooney requesting a statement of his time and expense in the Krinsky litigation. Alley replied to this, stating, "Also, there will be expenses of counsel. We have not yet rendered a bill, as we are awaiting the outcome of the motion [to dismiss] scheduled for July 27th." Willys made no response to this statement. By-law XXIII[5] referred to in

---

4. This claim became the subject of a separate suit in Michigan.

5. "*XXIII. Indemnification of Directors and Officers.* The corporation shall indemnify each director and officer of the

corporation against all or any portion of any expenses reasonably incurred by him in connection with or arising out of any action, suit or proceeding in which he may be involved by reason of his being

Paragraph 7 was adopted in 1946 purportedly in conformity with the Delaware statute [6] dealing with indemnification for litigation expenses.

On June 15, 1949, Empire and Realization filed a motion to dismiss Krinsky's last amended complaint in the Delaware Chancery Court. Alley had proposed that he enter Mooney's appearance and file a separate motion to dismiss but the attorneys appearing for Willys persuaded him not to take this action. On July 27, 1949, the complaint was dismissed with prejudice to Krinsky, to Willys and to all of its stockholders save as to the cause of action relating to Sorensen. See note 4, supra. On November 21, 1949, Krinsky's complaint in the United States District Court of Delaware was also dismissed with prejudice to Krinsky, Willys and all of its stockholders.

On August 10, 1949, Alley rendered to Mooney his bill for professional services in the sum of $11,000.00 and disbursements of $586.63. Mooney paid this bill on August 19, 1949, and on the same day transmitted the receipted bill to Willys with a request for reimbursement under Paragraph 7 of the contract of May 20, 1949. No action was taken by Willys until November 17, 1949, when the board of directors adopted the recommendation of the finance committee that Willys' secretary inform Mooney that Alley's bill "does not meet the requirements of Article XXIII of the By-Laws, and that Mr. Mooney be requested to give further consideration to the bill as submitted." On November 25, 1949, the secretary informed Mooney that Alley's bill did not meet "the requirement of the By-Laws, which provide for reimbursement of any expense reasonably incurred." On December 23, 1949, Alley wrote to the secretary detailing the services he had performed on behalf of Mooney and asking the secretary to state "in what respect the bill rendered fails to meet the requirements of your by-laws as to rea-

or having been an officer or director of the corporation (whether or not he continues to be an officer or director at the time of incurring such expenses), such expenses to include the cost of reasonable settlements (other than amounts paid to the corporation itself) made with the view to curtailment of cost of litigation, except that no sums shall be paid in connection with any such settlement unless the corporation is advised by independent counsel that the officer or director so indemnified was not derelict in the performance of his duty as such officer or director. The corporation shall not, however, indemnify such director or officer with respect to matters as to which he shall be finally adjudged in any such action, suit or proceeding to have been derelict in the performance of his duty as such director or officer, nor in respect of any matter on which any settlement or compromise is affected, if the total expense, including the cost of such settlement, shall substantially exceed the expense which might reasonably be incurred by such director or officer in conducting such litigation to a final conclusion and in no event shall anything herein contained be so construed as to protect or to authorize the corporation to indemnify any such director or officer against any liability to the corporation or to its security holders to which he would otherwise be subject by reason of willful misfeasance, bad faith, gross negligence or reckless disregard of the duties involved in the conduct of his office. The foregoing right of indemnification shall not be exclusive of other rights to which any director or officer may be entitled as a matter of law."

6. Act of April 15, 1943, 44 Del.Laws, c. 125, Delaware Corporation Law § 2(10): "To indemnify any and all of its directors or officers or former directors or officers or any person who may have served at its request as a director or officer of another corporation in which it owns shares of capital stock or of which it is a creditor against expenses actually and necessarily incurred by them in connection with the defense of any action, suit or proceeding in which they, or any of them, are made parties, or a party, by reason of being or having been directors or officers or a director or officer of the corporation, or of such other corporation, except in relation to matters as to which any such director or officer or former director or officer or person shall be adjudged in such action, suit or proceeding to be liable for negligence or misconduct in the performance of duty. Such indemnification shall not be deemed exclusive of any other rights to which those indemnified may be entitled, under any by-law, agreement, vote of stockholders, or otherwise."

sonableness." The secretary replied only that "The Board of Directors of this Corporation has stated, in its opinion, the bill does not meet the requirements of the By-Laws, for the reason that the amount of the bill is unreasonable.", and that the burden was on Mooney to show the reasonableness of the bill. Alley on January 31, 1950, again urged the reasonableness of the bill, but on reconsideration of its position on March 2, 1950, the board of directors refused to change its prior position. Upon notice from the secretary of this refusal, Mooney, on March 24, 1950, filed his complaint in the instant case.

Alley and his office associates devoted a total of about 433 hours to their representation of Mooney. The counsel fee of $11,000 thus represents an hourly charge of just over $25. While the services rendered by counsel for the named defendants Love and Sorensen were not comparable to Alley's, Willys paid the relatively greater hourly charges of those counsel without dispute.

In its answer to Mooney's complaint in the court below Willys reiterated the defense stated by its secretary that Alley's bill was not reasonable in amount. Willys also, for the first time, raised other objections to the bill. These were: (1) That Mooney was not named in the Krinsky litigation as a defendant by reason of his having been an officer or director of Willys; he was, rather, a conspirator with Canaday, Ritter, Empire and Realization to make unlawful profits for Realization through transactions with Willys and that therefore he was not within the class of persons to whom indemnity might be given under Willys' By-Law XXIII or Delaware Corporation Law § 2(10). (2) That since Mooney was never served with process in the Krinsky litigation and had entered no voluntary appearance, Mooney's counsel fees were not actually and necessarily incurred in connection with the defense of the Krinsky actions and that therefore he was not indemnifiable under the Delaware Corporation Law § 2(10). (3) That for the same reason, Mooney's expenses were not reasonably incurred in connection with or arising out of an action in which he was involved as an officer or director and that therefore he was not indemnifiable within Willys' By-Law XXIII. (4) That for the reasons set forth in the first two defenses, Mooney was not indemnifiable within Paragraph 7 of the contract of May 20, 1949.

The parties, and the court below, apparently treated the complaint as broad enough to include a cause of action based upon Willys By-Law XXIII and Delaware Corporation Law § 2(10), as well as upon the contract of May 20, 1949.[7] The court.

---

7. There is also discussion in the briefs below and in this court and there was argument as to Mooney's right to indemnity at common law. We regard this issue as not lying within the allegations of the complaint. Paragraph 15 of the complaint states: "Plaintiff paid the statement of the said law firm on August 19, 1949 and thereupon promptly requested reimbursement thereof from the defendant in pursuance of the provisions of the contract of May 20, 1949, set forth in paragraph 11 hereof, and of Article XXIII of defendant's by-laws." See also the first sentence of paragraph 18: "In addition to the foregoing and arising solely out of the wilful failure and refusal of defendant to honor its said contractual obligations to plaintiff, plaintiff has incurred and will incur, etc." The language quoted seems to exclude reliance on a common law right of indemnity.

Even in the light of the liberality granted the pleader under the Federal Rules of Civil Procedure it is necessary ordinarily to set up a cause of action relied on in the complaint. We might take a less strict view if Mooney's right of recovery rested solely on a common law action. See American Universal Insurance Company v. Sterling, 3 Cir., 203 F.2d 159.

Moreover, an interesting question can be raised as to whether or not Mooney by the terms of the contract of May 20, 1949 possibly did not exclude himself from a common law remedy. This paragraph states that Willys would pay a stated sum of money to Mooney except as to his expense incurred in connection with the Krinsky litigations. The last sentence of the paragraph states: "Payment of said sum [stated] shall be in full of all claims and demands of Mooney against Willys-Overland except sums payable pursuant to the terms of this agreement."

pointed out that insofar as the case involved the by-law and the statute, it was the first of its kind in Delaware. The court refused, however, to make the first judicial exposition of the Delaware statute, and awarded Mooney his recovery solely on its interpretation of the contract. The court said: "Here, plaintiff and defendant had agreed to terminate a contract of employment; and, as part of a give and take, Mooney was to have his attorneys' fees paid as well as, for example, the cost of the transportation and moving of his furniture from his old home to the place where he intended to establish a new home after such employment was terminated. All of the terms of the agreement looking to the finish of his employment with defendant were, I think, provisions a company may reasonably make in order to terminate a contract of employment which the company desires to end." See 106 F. Supp. at page 258.

The court noted Willys' argument that the Delaware statute and Willys' by-law should control this type of indemnification claim to the exclusion of all other arrangements, but it disposed of this as "a conceptualistic approach to the problem which I have rejected." The court thus held, in effect, that even assuming that Mooney's claim for the amount of Alley's bill was not within the requirements of the Delaware statute and Willys' by-law, Mooney could recover on his lawful contract. This view construes the contract as an independent undertaking to reimburse Mooney provided Alley's bill was reasonable.

Despite its stated ground for decision, however, the court found as a fact that Mooney was made a party defendant in the Krinsky litigation by reason of his then being and having been an officer and director of Willys, and that Alley's bill was incurred in connection with and arising out of that litigation. The court also found Alley's services reasonably necessary to Mooney's representation and worth the amount charged for them.

On this appeal only the defenses advanced for the first time in Willys' answer are in issue. Willys no longer contends that the Alley bill was unreasonable in amount.

We think that in this court neither party fully deals with the ground upon which the court below based its opinion. Both Mooney and Willys concentrate upon the proper construction of Paragraph 7 of the contract of May 20, 1949. Mooney contends that the contract was an independent undertaking to indemnify him for reasonable litigation expenses. The court below so found. Willys argues that the contract gave Mooney only his rights under all the terms of Willys' By-Law XXIII and the Delaware statute, whatever those rights might be. Mooney assumes that if his construction is accepted here, he is entitled to collect his judgment. He seeks to fortify this assumption by trying to establish a common law right to indemnity. Willys on the other hand states that its view must be correct, for under Mooney's contention the contract would go beyond By-Law XXIII and the Delaware statute and would therefore be ultra vires. Willys further remarks that the decision of the court below, which relies only upon the contract, must have been based upon the unwarranted assumption that Delaware corporations have a common law right to indemnify their officers and directors in these circumstances. But neither party notes the reliance of the court below upon the context of the May 20 contract—the give and take in the settlement of differences, most of them having nothing to do with indemnification for litigation expenses, and the exchange by Mooney of his rights under his previous employment contract in return for various payments by Willys. Of these payments reimbursement for litigation expenses was only one. Neither party discusses the lower court's view that this termination agreement might have validity independently of any other legal right to indemnity, whether by by-law, statute or common law. It is implicit in Willys' argument, although never explained, that the Delaware statute and Willys' By-Law XXIII make provision for indemnity for litigation expenses which is exclusive of all other arrangements, regardless of the contexts in

which such other arrangements are made. We will discuss this implicit contention at a later point.

■ Necessary to the view of the court below is its construction of the contract of May 20, 1949, as an independent undertaking to indemnify Mooney for reasonable litigation expenses. On the construction of this contract, Paragraph 7 in particular, the testimony is sharply conflicting. Willys pointed to previous drafts of Paragraph 7 which spelled out the construction Mooney now contends for, and cited the rejection by Willys of these drafts as evidence that Mooney's construction was not the one intended by the parties. Willys contended, moreover, that the present language of Paragraph 7 is not ambiguous but incorporates by reference *all* the terms of Willys By-Law XXIII. Mooney relied, in part, upon the subsequent view of the contract apparently taken by Willys' secretary and its board of directors in haggling over the amount of Alley's bill. This may not be evidence of the meaning intended by the parties at the time the contract was made, but it does show that even Willys has not always been certain of the meaning of Paragraph 7. The same arguments and contentions are repeated here. We think the reference to the by-law in paragraph 7 is ambiguous. While we might, on the evidence in this case, have construed Paragraph 7 differently than the court below, we think there was sufficient evidence to support that court's finding in this matter.

■■ Thus construed, was the contract one within the power of the corporation to make? We think it was. The court below cited no authority for its view that a corporation may make various payments, which otherwise might be unauthorized, to a salaried officer in exchange for his resignation before the term of his employment contract has expired. But perhaps the court below considered it clear that two parties capable of contracting for the employment of one by the other may also

mutually consent to terminate that contract. It is true that the resignation of corporate officers and directors may not be purchased with the purpose of replacing them with other persons who may not have the best interests of the corporation and its stockholders at heart. See 2 Fletcher, Cyclopedia of Corporations § 348. But it has been held that where there is no such ulterior purpose, a contract giving a resigning president a commuted payment in exchange for his loss of salary under his employment agreement and repurchasing his corporate stock is valid. Joseph v. Raff, 82 App.Div. 47, 81 N.Y.S. 546 (1st Dep't), affirmed without opinion, 1903, 176 N.Y. 611, 68 N.E. 1118.

The scarcity of cases involving such blameless termination agreements seems understandable. In the instant case Willys does not even now contend that Mooney's contract was invalid because it compensated him too generously for the rights he relinquished. The preamble to the agreement recited that it was in the best interest of Willys that Mooney resign. Had Paragraph 7 simply called for the payment of $11,500 to Mooney, it would be very doubtful that the contract could be considered ultra vires, or that Willys would now so consider it. We think that Paragraph 7, as construed by Mooney and the court below, may properly be considered an item similar to the payment of Mooney's moving expenses from Toledo to New York (Paragraph 3) or the payment of his salary for the balance of 1949 (Paragraph 5). Out of the context of a termination agreement, all of these payments might be ultra vires as mere gifts. In context they are valid and need no additional justification.

■ Willys remaining objection, therefore, can only be that its By-Law XXIII and Delaware Corporation Law § 2(10) provide exclusively for the terms on which an officer or director may claim indemnity for litigation expenses.[8] The court below condemned this view as "conceptualistic."

8. This objection we regard as implicit in Willys contention that the contract of May 20, 1949, construed as Mooney and the court below construe it, is ultra vires.

Willys did not explicitly plead ultra vires in the court below, but, in the view we take, we need not examine into the effect, if any, of this omission.

Neither do we accept it. Broadly speaking, the matter of indemnification of corporate officers and directors for litigation expenses is one with which the numerous share-holding member of the public and the state and federal regulatory agencies are properly concerned. But that concern is with the types of corporate employees and advisors who are made indemnifiable, and with the extent to which indemnification is carried, *e. g.*, should it extend to settlements, or to any cases in which the persons seeking indemnification are found liable? We think that Delaware Corporation Law § 2(10) and Willys' By-Law XXIII have met the requirements of public policy by the realistic limits they set upon the right of indemnification. We do not think that public policy requires that the Delaware statute be construed as controlling every conceivable situation which in one aspect may be called indemnification for litigation expenses, any more than the policy of ultra vires should be applied to invalidate those other payments under the contract which, except for the contract, would be gifts. Where there exists, as there does here, an independent ground for the payment of litigation expenses, we see no reason to make an overriding reference to the statute. The final sentence of the statute states: "Such [statutory] indemnification shall not be deemed exclusive of any other rights to which those indemnified may be entitled, under any by-law, agreement, vote of stockholders, or otherwise." And Willys' By-Law XXIII closes with the remark: "The foregoing right of indemnification shall not be exclusive of other rights to which any director or officer may be entitled as a matter of law." We think that Mooney's contract right to his counsel fees as part of a termination agreement is within the contemplation of these provisions. We have found nothing in the legislative history of the Delaware statute to indicate otherwise.

We see no danger here of encouraging non-meritorious claims for indemnification outside the by-law and the statute. An independent legal ground for such claims must be shown in every case.

Alternatively, because of the importance of this case as the first to involve § 2(10) of the Delaware Corporation Law and a by-law adopted thereunder, we hold that, assuming Willys' construction of the contract of May 20, 1949, is the proper one, Mooney is still indemnifiable within the terms of the Delaware statute and Willys' By-Law XXIII. The principal obstacles interposed by Willys to this conclusion are two:

I. Willys argues that Krinsky's complaint charged Mooney with wrongful actions, not as an officer or director, but as a controlling stockholder who, in conspiracy with Canaday, Ritter, Empire, Realization and the directors of Willys, had betrayed his fiduciary duty to the other stockholders. Willys points to the voluminous record before the court in the Krinsky litigation and to evidence adduced in the court below indicating that Mooney himself recognized that he could not lawfully vote on the alleged wrongful transactions between Willys and the Wilson Foundry & Machine Company, the subsidiary of Realization controlled indirectly by Mooney, Canaday and Ritter. In fact, Mooney disqualified himself to vote on these matters. He performed no acts as an officer or director of Willys. Therefore, says Willys, Mooney was only a wrongdoing controlling stockholder, and could only have been sued as such by Krinsky. Hence Mooney was not made a defendant by reason of his having been an officer or director as required by Willys' By-Law XXIII and § 2(10) of the Delaware Corporation Law.

We think that Willys' argument gives an incomplete view of Mooney's involvement in the Krinsky litigation. In determining the capacity in which Mooney was sued, primary emphasis must be placed upon Krinsky's complaint. While the complaint is properly construed as stating a cause of action against Mooney as a wrongdoing controlling stockholder, we think it also charged him with unlawful conduct as an officer and director of Willys.

It is clear that as to the alleged unlawful continuation of Sorensen's salary and

stock option privileges following Sorensen's resignation as president of Willys, Mooney was liable as an officer and director if the allegations could be supported by proof. Although this cause of action was dropped from the complaint by the amendment of March, 1949, Mooney, prior to that time, had had to prepare to meet this charge. At least part of Alley's work was directed to this matter.

Moreover, those allegations of the complaint involving Willys' transactions with Wilson and Realization in effect charged Mooney in a dual aspect, both as controlling stockholder and as an officer and director. Mooney was named as an individual defendant and identified as a director and officer of Willys, as well as a controlling stockholder. Had it been the fact that Mooney had *not* disqualified himself to vote on the transactions with Wilson, he might well have been found derelict in his duty to Willys as a director. Even not voting, he could conceivably have been held liable as an officer of Willys for dominating the board meeting at which the acquisition of the Wilson stock was authorized and expressing in the strongest terms his view that the Wilson assets were necessary to the successful continuation of Willys' business. The point is that it was up to Mooney to prove his actual role in these transactions. For example, Mooney undoubtedly prepared to prove that his employment with Willys did not begin until January 15, 1946, a date subsequent to the date originally alleged [9] as to the first wrongful waste of Willys' assets charged in the complaint, the acquisition of tools and equipment from Wilson. While Mooney's proof might have dissociated him from liability as an officer or director, he was sued in that capacity.

Willys contends, however, that where the proof in a stockholder's derivative suit is that an individual defendant did not commit as an officer or director any of the acts charged in the complaint, he is not entitled to indemnity for litigation expenses under Willys' By-Law XXIII

and the Delaware statute. In other words, the indemnity is to be limited to expenses incurred in the justification of actions actually taken by the officer or director in the administration of the corporate affairs. Willys cites Tomlinson v. Liquidators of Scottish Amalgamated Silks, Ltd., 1935 Sess. Cas. (H.L.) 1, denying indemnity for litigation expenses where the individual defendant had not in fact taken the action with which he was charged.

The problem presented by this contention is a novel one in American law. As we have said, this case is the first to involve the Delaware statute and a by-law adopted thereunder. And in the cases we have found granting indemnity in the absence of by-law or statute, it appears that all the defendants were defending some action actually taken in managing the corporation. Figge v. Bergenthal, 1906, 130 Wis. 594, 109 N.W. 581, 110 N.W. 798; Solimine v. Hollander, 1941, 129 N.J.Eq. 264, 19 A.2d 344; In re E. C. Warner Co., 1950, 232 Minn. 207, 45 N.W.2d 388. But we think that indemnity need not be limited to the type of situation presented in these cases. Suppose three directors are sued for wasting corporate assets in making a gift to charity. The first did not in fact attend the meeting at which the gift was authorized and was not chargeable with knowledge of it before suit. He goes to some expense to prove this at the trial. The second and third directors meanwhile prove that the gift was not ultra vires. Under Willys' view the second and third directors can recover their litigation expenses in Delaware, while the first cannot because he did not take the challenged action. Yet the plaintiff sued all three defendants as directors; he could not anticipate the defense offered by the first director. Under such circumstances we should be inclined to award all three their counsel fees. Similarly in the instant case Mooney was prepared to offer, in partial answer to his alleged wrongful participation in the acquisition of Wilson by Willys, the defense that he

9. This date was changed from 1945 to 1946 by the December amendment of Krinsky's complaint. Mooney had to be concerned with proving the correct date of the transaction in relation to the time of his employment by Willys.

did not vote as a director in this matter because his indirect interest in Wilson made it unlawful for him to do so. Unless it appeared more clearly than it does from Krinsky's complaint that Krinsky had no ground for holding Mooney liable as a director or officer, we think the nature of this partial defense should not bar Mooney's claim for indemnity.

The Tomlinson case, [Tomlinson v. Liquidators of Scottish Amalgamated Silks, Ltd., 1953, Sess.Cas. (H.L.) 1], cited by Willys does not compel a contrary conclusion. In that case the articles of association provided for indemnity against "all costs, losses, and expenses which any * * * Director * * * may incur or become liable to by reason of any contract entered into, or act or deed done, by him as such Director *. * * in the discharge of his duties." The decision requiring that the director's claim be for expenses in defending an act actually performed was a construction of this explicit language. Delaware Corporation Law § 2 (10) and Willys By-Law XXIII require only that the person claiming indemnity have been involved in litigation "by reason of his being or having been" an officer or director. This is broad enough to include Mooney's situation in the instant case.

In conclusion on this point we note that although part at least of Mooney's expenses are claimed to be attributable to defending the charges against him solely as a controlling conspiring stockholder and not as a director or officer, there is no way to separate out this part. Moreover, the real burden of Mooney's defense would have been to set forth in full his version of his business dealings while associated with Willys. While this exposition might have served to answer all claims against him, it appears that no less effort would have been necessary to answer one of them separately. We think that substantially the whole of Alley's bill was thus connected with that aspect of Krinsky's action which charged Mooney as an officer and director of Willys.

II. Willys further contends that because Mooney neither was served with process in the Krinsky litigation nor entered a voluntary appearance, his expenses were not "actually and necessarily incurred" [Delaware Corporation Law § 2(10)] or "reasonably incurred" (Willys' By-Law XXIII) "in connection with the defense of" [§ 2(10)] or "in connection with or arising out of" (By-Law XXIII) the Krinsky action. Willys points out that the active defense of the action was conducted by the corporate defendants, Empire and Realization, and claims that Alley's work was mere duplication of the efforts of counsel for these defendants.

■■ We think that considering the broad language used in the Delaware statute and Willys' by-law an officer or director need not actually appear in an action such as Krinsky's in order to be indemnified for his litigation expenses. It seems clear that the purpose of statutes such as Delaware's is to encourage capable men to serve as corporate directors, secure in the knowledge that expenses incurred by them in upholding their honesty and integrity as directors will be borne by the corporation they serve. The court below found that Mooney was concerned for his business reputation, and that he and Alley had determined to enter Mooney's appearance in the Krinsky action. Alley therefore thoroughly prepared Mooney's defense. Although Alley was persuaded not to enter Mooney's appearance at the time of the filing of the corporate defendants' motion to dismiss, it is apparent that had that motion been decided adversely to those defendants Mooney would have joined in the defense on the merits offered upon trial of the action. We conclude that Alley's preliminary work on Mooney's behalf, prior to the dismissal of the Krinsky complaints, was performed "in connection with the defense of" Krinsky's charges. If the Delaware statute and Willys' by-law intended to deny indemnity to a person in Mooney's position, they would surely have used language more indicative of this intent.

■■ ■■ As to the extent to which Alley's work unnecessarily duplicated the research of other counsel in the case, this presents what is, perhaps, a closer ques-

tion. We conclude that in actions such as Krinsky's an effort must be made to coordinate the defense with a view to minimizing the usual heavy expenses of this type of litigation. The Delaware statute must not be abused to authorize each individual defendant to employ counsel to prepare his defense as though he alone were sued. In the instant case, however, there is some evidence of cooperation among counsel for the various named defendants. And the court below found (Finding of Fact No. 30) that:

"Taking into consideration Mooney's purpose to enter an appearance and to defend the Krinsky litigation on the merits, the volume of the documentary and deposition evidence requiring study and analysis by Alley, and the many other details requiring a lawyer's time, as evidenced by the correspondence passing between the attorneys representing the several parties, including Willys, it cannot be said Alley and his associates spent more time on Mooney's behalf in connection with the Krinsky litigation than was reasonably required for the proper representation of Mooney."

We think there was sufficient evidence to sustain this finding.

Mooney's brief in this court makes one final contention, that "the plaintiff here might well have maintained this cause of action successfully even in the absence of the Delaware Statute and Article XXIII of Willys' by-laws, and even without the special contract here present." Mooney then discusses cases granting indemnity at common law. As we have indicated,[10] although Mooney might have alleged a common law right of indemnity,

he did not do so. It is, of course, unnecessary for us to discuss this contention because of the views already stated in this opinion. We note merely that although the earlier cases dealing with this subject are divided,[11] a more favorable attitude among judges[12] and other writers[13] has been developing in recent years.

For the reasons stated the judgment of the court below will be affirmed.

---

10. See footnote 7, *supra.*

11. Denying indemnity: Griesse v. Lang, 1931, 37 Ohio App. 553, 175 N.E. 222; Tomlinson v. Liquidators of Scottish Amalgamated Silks, Ltd., 1935 Sess.Cas. (H.L.) 1; New York Dock Co. v. McCollom, 1939, 173 Misc. 106, 16 N.Y.S.2d 844; Mann v. Hearst, Superior Court of Los Angeles County, California (1941) (unreported). Granting indemnity: Figge v. Bergenthal, 1906, 130 Wis. 594, 109 N.W. 581, 110 N.W. 798; Solimine v. Hollander, 1941, 129 N.J.Eq. 264, 19 A.2d 344.

12. See In re E. C. Warner Co., 1950, 232 Minn. 207, 45 N.W.2d 388.

13. See Washington, Corporate Executives' Compensation, Chapters 16, 17 and 19 (1942); Corporate Responsibility for Litigation Expenses of Management, 40 Calif.L.Rev. 104 (1952) passim.