**WESTERN FIBERGLASS, INC., a Utah corporation, Plaintiff, Appellant, and Cross–Respondent,**

v.

**KIRTON, McCONKIE AND BUSHNELL, a professional corporation, Defendant, Respondent, and Cross–Appellant.**

No. 890407–CA.

Court of Appeals of Utah.

March 2, 1990.

Joseph R. Fox, Sandy, for plaintiff, appellant and cross-respondent.

Stephen B. Nebeker, Thomas L. Kay, and Paul D. Newman, Salt Lake City, for defendant, respondent and cross-appellant.

Before DAVIDSON, BILLINGS, and JACKSON, JJ.

JACKSON, Judge:

Western Fiberglass, Inc. (Western) appeals a judgment based on a jury verdict which found the parties equally negligent in failing to file security instruments. The law firm of Kirton, McConkie and Bushnell (Kirton) cross-appeals the denial of costs and fees claimed under the corporate indemnity provision of the Utah Business Corporation Act, Utah Code Ann. § 16–10–4(2)(c) (Supp.1989). We affirm on both appeals.

I. NATURE OF THE CASE

Western sued Kirton claiming damages for Kirton's legal malpractice arising out of Western's sale of equipment to United Fiberglass, Inc. (United). Western alleged two claims of attorney negligence:

(1) Kirton failed to perfect a security interest in United's accounts receivable for Western's benefit.

(2) Kirton failed to inform Western that Western's right to repossess the equipment on United's default was subject to the prior liens of Sovran Bank.

Kirton raised Western's contributory negligence as a defense to both claims. Further, Kirton requested indemnification for its costs and fees under section 16–10–4(2)(c).

The respective claims, except Kirton's indemnification claim, were submitted to the jury on special verdict forms. The jury found the parties equally negligent on the accounts receivable claim. The jury found Kirton had performed its duty regarding the equipment claim. The trial court denied Kirton's application for indemnification of costs and fees under the Utah Business Corporation Act.

## II. THE DIRECT APPEAL

Western identifies the principal issue on appeal to be "whether the jury's finding that the plaintiff was 50% negligent was proper?"[1] Western's challenge is to the findings of fact underlying the judgment that it was contributorily negligent.[2] "The general, although not universal, rule is that contributory negligence is an affirmative defense which must be alleged and established by the attorney, and which almost always presents a question for the trier of fact." Mallen & Smith § 17.2.

■ Our standard of review for this challenge is well settled. Resolution of a factual dispute is a matter for the jury as trier of fact, unless evidence on the issue "so clearly preponderates in favor of the appellant that reasonable people would not differ on the outcome of the case." *Cambelt Int'l Corp. v. Dalton*, 745 P.2d 1239, 1242 (Utah 1987) (quoting *E.A. Strout W. Realty Agency, Inc. v. W.C. Foy & Sons, Inc.*, 665 P.2d 1320, 1322 (Utah 1983)). Absent such a circumstance,

> the burden on an appellant to establish that the evidence does not support the jury's verdict and the factual findings implicit in that verdict ... is quite heavy. We consider the evidence in the light most favorable to the verdict, and we will not overturn it on appeal when it is supported by substantial and competent evidence.

*Cambelt*, 745 P.2d at 1242 (citing *Von Hake v. Thomas*, 705 P.2d 766, 769 (Utah 1985)). Furthermore, to successfully attack the verdict, an appellant must marshal all the evidence supporting the verdict and then demonstrate that, even viewing the evidence in the light most favorable to that verdict, the evidence is insufficient to support it. *Id.*

■ Western's brief is silent concerning the proper standard of review. Since Western ignored the standard, its brief failed to marshal the evidence which pertains to the jury's finding that it was 50% negligent.[3] Instead, Western merely presented the evidence supporting the jury's finding that Kirton was 50% negligent and claimed there was no evidence that Western was contributorily negligent.

Kirton realized that standard of review is of some consequence on appeal and at-

---

**1.** Western has not challenged, as a matter of law, the availability of the defense of contributory negligence in a legal malpractice action. Western's challenge is that there is no evidence that Western was negligent or that its negligence was causally connected to the injury and damage suffered. Thus, Western argues, the evidence does not support a finding of any contributory negligence. Western did not take exception to the jury instructions nor the special verdict form which submitted the question of contributory negligence to the jury. *See Acculog, Inc. v. Peterson*, 692 P.2d 728 (Utah 1984).

**2.** Contributory negligence is a legal defense against a plaintiff in an attorney malpractice suit.

Although some have argued that lawyers, as fiduciaries, should not be able to urge contributory negligence as a defense, all courts which have considered the issue have either directly or implicitly held the defense available in a legal malpractice action. R. Mallen & J. Smith, *Legal Malpractice* § 17.2 (3d ed.1989) (hereinafter Mallen & Smith).

**3.** Forthcoming amendments to our appellate rules will require parties to "state the applicable standard of appellate review and cite supporting authority" for each issue raised in docketing statements and briefs. Utah R.App.P. 9(c), 24 (effective April 1, 1990).

tempted to identify the proper standard for this issue. But Kirton incorrectly identified the standard as "the verdict will not be disturbed if there is any reasonable support in the evidence." Nevertheless, Kirton has marshaled the evidence supporting the jury's finding that Western was 50% negligent, thus performing the first half of Western's task.

This evidence revealed the following conduct by Western. Western subordinated its security interest in United's accounts receivable to Sovran Bank's security interest. When Sovran Bank foreclosed on its security interest in the accounts, they amounted to less than the amount owed the Bank. Western did not keep Kirton fully involved in and informed about the negotiations for and closing of the United transaction. Kirton advised Western to be represented by counsel during the closing of the United deal to make sure everything was done properly. Western disregarded that advice and failed to have independent legal representation at the closing. Western proceeded to finalize the deal on its own and relied on United's counsel to complete the paperwork. As a result, Western's financing statements were not filed and its security interest in the accounts receivable was not perfected.

On appeal, Western has failed to demonstrate how the foregoing evidence is insufficient to support the finding that it was equally negligent with Kirton. When we view that evidence in the light most favorable to the verdict, we find the verdict to be supported by substantial and competent evidence.

Both parties have claimed error in the jury's calculation of damages and finding that Western suffered a substantial amount of damages. Western claims the amount was low. Kirton claims the amount was too high. Due to our ruling above, we need not reach the issue of the correct amount of damages. The 50/50 negligence findings obviate the need for review because whatever the amount, nothing can be awarded. *See* Utah Code Ann. § 78–27–38 (1987). To recover damages, defendant's negligence must be greater than plaintiff's. Otherwise, plaintiff's negligence is a complete defense.

Western also grouses about the exclusion of certain evidence, an issue which we deem to be without merit.

## III. THE CROSS–APPEAL

■ Kirton filed a post-trial motion for payment of its costs and fees pursuant to section 16–10–4(2)(c) of the Utah Business Corporation Act. That subsection provides:

(c) To the extent that a director, officer, employee, or agent of a corporation has been successful on the merits or otherwise in defense of any action, suit or proceeding referred to in Subsection (2)(a) or (b), or in defense of any claim, issue, or matter therein, he shall be indemnified against expenses, including attorneys' fees, which he actually and reasonably incurred in connection therewith.

The trial court denied the motion. Western opposed the motion below, but did not file a reply brief on cross-appeal, and merely opposed the issue at oral argument. Kirton's brief discusses the issue in two subparts: (1) agents are entitled to indemnification as a matter of law when they prevail; and (2) Kirton was an agent of Western and is entitled to indemnification. We think the issues should be examined in inverse order, because if Kirton was not an "agent" within the meaning of the statute, the analysis ends. Unfortunately for us, Kirton's brief devoted less than two pages to the meaning of "agent" in the Utah Business Corporation Act. Further, Kirton directed us to just one unpublished case [4] and the Restatement (Second) of Agency § 1 (1958) to support its claim of corporate "agent" status. Kirton did not claim that the law firm or the attorney advising Western was a director, officer or employee of the corporation. Kirton merely claims that it, not the assigned attorney, was Western's "agent." The trial court stated, "I do not

---

**4.** *Katayama v. Interpacific Properties, Inc.,* 190 Cal.App.3d 1604, 236 Cal.Rptr. 108 (Ct.App. 1987) (ordered not officially published, Rule 976, Cal. Rules of Ct.)

believe the argument put forth by the defendant is what the legislature had in mind in regards to indemnification of agents and officers and so forth." The meaning or construction of the statute, i.e., what the legislature had in mind, presents a question of law. *Berube v. Fashion Centre, Ltd.*, 771 P.2d 1033, 1038 (Utah 1989), *Asay v. Watkins*, 751 P.2d 1135 (Utah 1988). On review, we accord conclusions of law no particular deference, but review them for correctness. *Scharf v. BMG Corp.*, 700 P.2d 1068, 1070 (Utah 1985). We are free to reappraise the trial court's legal conclusions. *Berube*, 771 P.2d at 1038. The question of law before us, more precisely stated, is: Does the word "agent" in the corporate indemnification provision of our statute include a law firm engaged by a corporation to render legal advice concerning a sale of corporate equipment?

The Utah indemnification provisions, found in section 16–10–4, were substantially amended in 1987, and there are no published appellate opinions interpreting their scope. For us to engage in a meaningful analysis of the Utah indemnification statute, we must examine the history of the indemnification problem.[5] Early judicial decisions adopted rationales as follows: The unsuccessful corporate officials who were held liable for negligence or guilty of misconduct in performance of duties could not obtain reimbursement for litigation expenses because they were not acting for the benefit of the corporation. Officials who were successful in defending their actions caused a split in judicial opinion. Some courts held reimbursement was not improper or unjust. Others looked for benefit to or protection of the corporation as grounds for reimbursement. Some refused to reimburse on the theory that the action was illegal or beyond authority. The pivotal decision was *New York Dock Co. v. McCollum*, 173 Misc. 106, 16 N.Y.S.2d 844 (Sup.Ct.1939), which denied indemnification

to directors who were vindicated in a derivative suit. Though innocent, they were forced to pay their own substantial attorneys fees because no benefit to the corporation was apparent. That decision prompted adoption of the first indemnification statutes. *See* Cheek, *Control of Corporate Indemnification: A Proposed Statute*, 22 Vand.L.Rev. 255, 258–262 (1969).

> The indemnification statutes vary in content, but can be classified into two categories, permissive or "enabling" statutes, which give a corporation power to indemnify its officers and directors under certain circumstances, and mandatory or "right" statutes, which give the officer or director an enforceable right to indemnification when statutory standards of conduct are met.

Barrett, *Mandatory Indemnification of Corporate Officers and Directors*, 29 Sw. L.J. 727 (1975).

Delaware's statute was revised extensively in 1967 and has been the prototype for the subsequent model acts. Comments to the Model Business Corporation Act, as revised July 1, 1969, state:

> The basic principle involved is to what extent and under what circumstances should corporate funds be used to reimburse directors, officers and employees for expenses incurred in defending themselves against *personal attacks upon their official acts.*

1 Model Bus. Corp. Act Ann. 2d § 5 para. 2 (1971) (emphasis added). Barrett researched the revision commission and legislative background of section 145(c) of the Delaware law, which at that time was similar to our present section 16–10–4(2)(c). *See* Barrett, 29 Sw. L.J. at 733. Subsection (c), mandatory indemnification, was enacted primarily to protect vindicated officers and directors from a refusal to indemnify when an adverse shift in management oc-

**5.** We have surveyed the commentators for the public policy that prompted state legislatures to indemnify corporate officers and agents beginning in New York in 1941. As of 1953, sixteen states had statutory authority for indemnification of directors. As of 1969, 43 states had such provisions and 20 had reformed their legislation since 1960. Cheek, *Control of Corporate Indemnification: A Proposed Statute*, 22 Vand.L.Rev. 255, 256 n. 4 (1969). As of 1975, only Idaho and New Hampshire had no indemnification statutes. Barrett, *Mandatory Indemnification of Corporate Officers and Directors*, 29 Sw. L.J. 727 (1975).

curred. However, the Delaware statute does not limit application to that situation. Barrett concluded:

> under section 145(c) an insider who has been successful wholly or partially on a technical defense may demand and receive indemnification, including legal fees, notwithstanding the standards of conduct in (a) and (b) that must be met if the corporation chooses to indemnify. An underlying policy for the enactment of an indemnification provision *favorable to management* was the desire to attract incorporators for the state of Delaware.

*Id.* at 733 (emphasis added).

In a nutshell, the legislative judgment is that indemnity protection is necessary or desirable to encourage the recruitment of capable management. *Wisener v. Air Exp. Intl. Corp.*, 583 F.2d 579, 583 (2d Cir.1978). A further·justification for indemnity, beyond enhancing the quality of corporate management, is to allow and encourage agents to pursue activities on behalf of the corporation in a manner unfettered by fear of taking good faith risks in the search for profits. Irenas & Maskowitz, *Indemnification of Corporate Officers, Agents, and Directors: Statutory Mandates and Policy Limitations*, 7 *Seton Hall Legis. J.* 117

(1984). The fear of liability and of the inability to attract top people as directors is still present; however, the fear is no longer based upon suits arising from bad business conditions but is due to other more compelling factors, such as increased hazards of liability under federal antitrust and securities laws and strict judicial interpretation of the standards of executive liability. Cheek, 22 Vand.L.Rev. at 256–57.

The foregoing survey reveals that legislatures have implemented indemnity statutes so corporations can attract capable management executives, not competent attorneys at law. The statutes are designed to protect persons exercising corporate discretion and authority,[6] not the attorneys those persons hire to give them legal advice. Based on public policy considerations, we conclude that Kirton was not a corporate "agent" within the meaning of the statute.

The Utah Business Corporation Act, Utah Code Ann. §§ 16–10–1 to –143, was originally adopted in 1961. Section 16–10–2, Definitions, does not define agent.[7] The word agent appears in three places other than the indemnification provision. Section 16–10–45, officers, provides for the election

---

**6.** For example, no officer or agent of a corporation has authority to bind the firm in a real estate deal without a board resolution. This is true even of a corporate secretary/treasurer who, it is commonly known, is not ordinarily a principal officer who binds a corporation. *Foster v. Blake Heights Corp.*, 530 P.2d 815, 818 (Utah 1975).

> The authority of attorneys to bind a corporation is precisely the same as in the case of natural persons. Unless authorized to do so, a corporation's attorney cannot bind it by any contract or act beyond the scope of his employment, and when his power to act is revoked his authority ceases.

W. Fletcher, *Cyclopedia of the Law of Private Corporations* § 483 (1982).

**7.** We found only two commentators who have considered the meaning of "agent" in an indemnification statute. Heylar, *Indemnification of Corporate Agents*, 23 U.C.L.A. L. Rev. 1255, (1976) (hereinafter Heylar); H. Henn & J. Alexander, *Laws of Corporations and Other Business Enterprises* (3d ed. 1983) (hereinafter Henn & Alexander). Both comments are brief. Heyler devotes a paragraph to the idea and concludes that under the California statute it would seem

that "at least under some circumstances a lawyer would be treated as an 'agent' under established agency rules." Heylar at 1256. Henn and Alexander note Heyler's comment and state:

> Use of the term "agent" is unfortunate, because of possible connotations of agency law unfamiliar to a growing number of judges, lawyers and law students. Apart from statutory and decisional aberrations, directors are not agents and officers and other corporate personnel are [agents] only to the extent that they have power to bind the corporation.

Henn & Alexander at 1140 n. 94.

Barrett refers to those persons who are indemnified as "management personnel" and "successful executives." *See* Barrett, 29 Sw. L.J. at 727 nn. 49, 50. Cheek also identifies the indemnified as corporate executives: "This concern ... [is] only one aspect of broader anxiety over the increasingly strict judicial interpretation of the standards of executive liability. This worry is multiplied when one considers the unprecedented increase in the number of suits filed against executives." Cheek, 22 Vand.L. Rev. at 657. We think Barrett's and Cheek's characterizations are correct, i.e., "agents" are management personnel and executives of the corporation.

of officers by the board of directors, then states, with our emphasis added:

> all *officers and agents* of the corporation, as between themselves and the corporation, shall have such authority and perform such duties in the *management of the corporation* as may be provided in the *bylaws,* or as may be determined by *resolutions* of the board of directors not inconsistent with the bylaws.

This section reveals that officers and agents are persons possessing management authority of the corporation. Their grant of corporate authority is provided by bylaw or board resolution. Kirton has not claimed management authority from Western, only that Kirton was retained to act on Western's behalf, subject to Western's control. That is, Kirton was not exercising any corporate discretion or authority but was under the direction of Western's officers and agents. Kirton has not pointed to any bylaw or resolution empowering it with corporate management authority at Western.

Section 16–10–46 also addresses the terms "agent" and "officer" in tandem: "Election or appointment of an *officer or agent* shall not of itself create contract rights." (Emphasis added). Finally, the section of the statute setting forth general powers gives authority to a corporation "to elect or appoint *officers and agents* of the corporation, define their duties and fix their compensation." Utah Code Ann. § 16–10–4(1)(k) (Supp.1989) (emphasis added).

This recurring combination of the words "officer" and "agent" in the statute indicates persons operating on equal footing in the management authority of the corporation. Thus, when we arrive at the provision in question, section 16–10–4(2)(c), and find the words "director, officer, employee or agent" combined, we conclude that they have synonymous underlying meanings. The statute is concerned with corporate personnel who exercise management discretion and who have authority to bind the corporation, not someone like Kirton hav-

ing any type of agency relationship with the corporation.

The judgment is affirmed.

DAVIDSON, J., concurs.

BILLINGS, Judge (concurring):

I concur with the majority opinion, except for section III concerning the cross-appeal, in which I concur in result only.