848 A.2d 781 (2004)
369 N.J. Super. 156
Alvin COHEN, Nili Cohen, Marvin J. Rothenberg, Janet D. Rothenberg, and Adrian Field, Plaintiffs,
v.
SOUTHBRIDGE PARK, INC., a New Jersey Cooperative Corporation, Defendant/Appellant/Cross-Respondent, and
Stephen C. Muhlstock, and Gittleman, Muhlstock, Chewcaskie & Kim, Defendants-Respondents/Cross-Appellants, and
Herbert Greenberg, Anthony Pellosie, Marc Greenberg, and The Pellogreen Group, Inc., Defendants.
Superior Court of New Jersey, Appellate Division.
Argued March 2, 2004.
Decided May 5, 2004.
*782 Lawrence H. Wertheim, Woodbridge, argued the cause for appellant/cross-respondent Southbridge Park, Inc. (Himelman, Wertheim & Geller, attorneys; Mr. Wertheim, of counsel; Mr. Wertheim, Galit Kierkut, and Kellie A. Lavery, on the brief).
Douglas F. Ciolek, Hackensack, argued the cause for respondents/cross-appellants Stephen C. Muhlstock and Gittleman, Muhlstock Chewcaskie & Kim (Harwood Lloyd, attorneys; Charles E. Powers, Jr., of counsel; Mr. Powers and Mr. Ciolek, on the brief).
Before Judges PRESSLER, ALLEY and PARKER.
The opinion of the court was delivered by ALLEY, J.A.D.
An independent outside attorney prevailed in defending a suit brought against him on behalf of a corporation that claimed he committed malpractice as attorney for the corporation in another matter. The lawyer asserted that the corporation was required to indemnify him for the expenses of the suit on the basis that he is a "corporate agent," as that term is used in the New Jersey Business Corporation Act, N.J.S.A. 14A:1-1 to 16-1, specifically N.J.S.A. 14A:3-5(1)(a).
The requirement that a corporation indemnify a "corporate agent" is set forth in N.J.S.A. 14A:3-5(4), which essentially provides that a New Jersey corporation "shall indemnify a corporate agent against expenses to the extent that such corporate agent has been successful on the merits or otherwise in any proceeding referred to in subsections 14A:3-5(2) and 14A:3-5(3) or in defense of any claim, issue or matter therein." The trial judge ruled that the attorney was "a corporate agent" and thus entitled to such statutory indemnification. We reverse.

I
The attorney in this case is Stephen C. Muhlstock and his law firm is Gittleman, Muhlstock, Chewcaskie & Kim, to whom we collectively refer, unless the context otherwise requires, as "Muhlstock." Muhlstock was outside counsel for Southbridge Park, Inc. (Southbridge), a New Jersey business corporation whose purpose is to provide residences for shareholders at a 174 unit cooperative apartment building in Fort Lee known as The Plaza.
Beginning in 1988, C & R Realty and Management, Co., Inc. ("C & R") became The Plaza's managing agent. The property *783 manager that C & R assigned to work at The Plaza was Anthony Pellosie, who had begun with C & R in 1987. In 1995, the property management agreement between Southbridge and C & R was in its last year, with a September 1 expiration date. A few months before that date, Southbridge's board of directors looked into alternate management arrangements for The Plaza. It decided in the end to hire Pellosie and another C & R employee as its property managers and the agreement between Southbridge and C & R came to an end.
About two years earlier, Muhlstock had been hired by Southbridge's board of directors as their attorney. Muhlstock and his firm had a number of other clients and engaged in a general practice that included litigation, real estate, matrimonial, and other legal work. The firm represented five to eight condominium and cooperative boards.
Pellosie left C & R and was in fact hired by Southbridge effective September 8, 1995. C & R then sued him for alleged breach of agreement, and Southbridge entered into an indemnification agreement with Pellosie. Muhlstock prepared that agreement, and he also prepared board resolutions and a conflict of interest waiver. When C & R asserted new claims in the litigation in October 1997, Muhlstock was replaced as counsel for Pellosie in that litigation because it appeared he would be a witness with respect to those new claims.
On May 3, 1999, plaintiffs brought a derivative action on behalf of Southbridge alleging conspiracy and fraud in the hiring of a property manager. In that action, plaintiffs claimed that Muhlstock committed legal malpractice in representing the corporation in the hiring of a manager. Among other things, that suit sought a declaration that the indemnification agreement with Pellosie had been unlawfully entered into by Southbridge. The sixth count of the complaint contained a claim for damages against Muhlstock for counsel fees that Muhlstock received for representing Pellosie in the other litigation. Plaintiffs amended their complaint a second and third time on May 11, 1999, and January 31, 2000. The trial court consolidated the derivative action with the C & R action, against which Southbridge had provided indemnification to Pellosie for his legal expenses.
At the trial of the claims in the derivative action, the court dismissed the claims against Muhlstock. When Muhlstock moved to have Southbridge indemnify it for the counsel fees and disbursements incurred in defending the malpractice claim, his motion was granted on the basis that he was the "corporate agent" of Southbridge as that term is used in N.J.S.A. 14A:3-5(1)(a).
In granting Muhlstock's indemnification motion, the trial court noted that N.J.S.A. 14A:3-5(4) "provides for the indemnification of a corporate agent." The court then rejected Southbridge's contention that Muhlstock was "merely an independent contractor and not an agent," reasoning instead that, "[b]oth intuitively and as a matter of law, a corporate attorney advising a corporate client on matters relating to the employment of other corporate employees and other corporate agents is clearly a corporate agent within the meaning of the statute."
Muhlstock asserts that the trial court reached the correct result when it concluded that he was Southbridge's "corporate agent" for purposes of N.J.S.A. 14A:3-5(4). He argues that an "attorney-client relationship is always considered that of principal-agent pursuant to New Jersey and other persuasive law," and thus that he unquestionably is entitled to the statutory *784 indemnification that is available to "corporate agents" under N.J.S.A. 14A:3-5(4).

II
In Witco Corp. v. Beekhuis, 38 F.3d 682, 691 (3d Cir.1994), the Third Circuit noted that modern corporate indemnification legislation is designed
to "promote the desirable end that corporate officials will resist what they consider" unjustified suits and claims, "secure in the knowledge that their reasonable expenses will be borne by the corporation they have served if they are vindicated." Beyond that, its larger purpose is "to encourage capable men to serve as corporate directors, secure in the knowledge that expenses incurred by them in upholding their honesty and integrity as directors will be borne by the corporation they serve."
[quoting Merritt-Chapman & Scott Corp. v. Wolfson, 321 A.2d 138, 141 (Del.Super.1974) (quoting Folk, The Delaware General Corporation Law 98 (1972)) (citations omitted).]
Here, of course, the issue is not whether indemnification for corporate officials should be approved, because our Legislature has already approved it. Rather, our inquiry is whether Muhlstock comes within that class of persons the Legislature has deemed entitled to indemnification. Specifically, the focal point of our analysis is the statutory language "corporate agent," since if Muhlstock, though serving as an outside attorney, was acting as a corporate agent within the statute's meaning, he was entitled to indemnification pursuant to its terms, and otherwise he was not.
It is firmly established that "[t]he first step in determining the Legislature's intent is to look at the plain language of the statute." Hubbard v. Reed, 168 N.J. 387, 392, 774 A.2d 495 (2001). Furthermore, "when the language of a statute is clear on its face, `the sole function of the courts is to enforce it according to its terms.'" Ibid. (quoting Sheeran v. Nationwide Mut. Ins. Co., 80 N.J. 548, 556, 404 A.2d 625 (1979)) (internal citations omitted).
In our view, however, this is not a "plain language" case, and Muhlstock's argument oversimplifies the lawyer-client relationship. While "[i]t is clear that an attorney acts as an agent for his client," Hewitt v. Allen Canning Co., 321 N.J.Super. 178, 184, 728 A.2d 319 (App.Div.), certif. denied, 161 N.J. 335, 736 A.2d 528 (1999), it is also true that a "lawyer, although required to work for the client's benefit, has considerable independence in doing so." Restatement (Third) of The Law Governing Lawyers, Introductory Note to Chapter 2, The Client-Lawyer Relationship (2000). Thus, "attorneys are also independent contractors as well as agents." McCarthy v. Recordex Serv., Inc., 80 F.3d 842, 853 (3d Cir.), cert. denied, 519 U.S. 825, 117 S.Ct. 86, 136 L.Ed.2d 42 (1996); see Restatement (Second) of Agency, § 14N (1958) ("One who contracts to act on behalf of another and subject to the other's control with respect to his physical conduct is an agent and also an independent contractor").
There appears to be no published case in New Jersey that has decided whether an attorney who was outside counsel to a corporation and who was subsequently sued for malpractice by shareholders of that corporation may be indemnified as a "corporate agent" under N.J.S.A. 14A:3-5(4) against legal costs incurred in defending against the malpractice claim. We are, however, guided by the interpretive principle that a court can find assistance in construing a statute by examining similar statutes in other states, 2B Singer, Sutherland on Statutory Construction, *785 § 52.03 (6th ed.2000), particularly if they are statutes from which ours has been copied or derived, Francis v. United Jersey Bank, 87 N.J. 15, 28, 432 A.2d 814 (1981), or a uniform act, Singer, supra, at § 52.05. We accordingly turn to the law of other states that have considered similar issues under statutory indemnification provisions that are comparable to those in N.J.S.A. 14A:3-5. While the law on this point appears to be sparse, a few reported cases afford valuable guidance.
In particular, the cases from other jurisdictions that we find helpful in this connection, and which we cite here in the order in which we will discuss them below, are Western Fiberglass, Inc. v. Kirton, McConkie and Bushnell, 789 P.2d 34 (Utah App.1990); Channel Lumber Co. v. Porter Simon, 78 Cal.App.4th 1222, 93 Cal. Rptr.2d 482 (2000); and Fasciana v. Electronic Data Systems Corp., 829 A.2d 160 (Del.Ch.2003).[1]
As a threshold matter, we point out that the issue before us stands on a different footing than claims under N.J.S.A. 14A:3-5(2) and 14A:3-5(3), which provide for permissive corporate indemnification of certain persons in certain circumstances. Thus, N.J.S.A. 14A:3-5(2) provides that a New Jersey corporation has the power to indemnify a "corporate agent" against liability and legal expenses incurred "in connection with any proceeding involving the corporate agent by reason of his being or having been such a corporate agent, other than a proceeding by or in the right of the corporation." Addressing shareholders' derivative actions and other actions by or on behalf of a corporation, N.J.S.A. 14A:3-5(3) essentially provides that a corporation has the power to indemnify a "corporate agent" against such legal expenses "in connection *786 with any proceeding by or in the right of the corporation to procure a judgment in its favor which involves the corporate agent by reason of his being or having been such corporate agent."
The present claim stands outside the fact pattern of a typical permissive indemnification claim under N.J.S.A. 14A:3-5(2) and 14A:3-5(3). Instead, it rests on N.J.S.A. 14A:3-5(4), which provides that:
[a]ny corporation organized for any purpose under any general or special law of this State shall indemnify a corporate agent against expenses to the extent that such corporate agent has been successful on the merits or otherwise in any proceeding referred to in subsection 14A:3-5(2) or subsection 14A:3-5(3) or in defense of any claim, issue or matter therein.
Read in conjunction with N.J.S.A. 14A:3-5(3), N.J.S.A. 14A:3-5(4) requires that a corporation indemnify its "corporate agent" if that agent is successful in a shareholders' derivative action involving that agent. In the present case, the court relied upon N.J.S.A. 14A:3-5(4) as its basis for ordering Southbridge to indemnify Muhlstock against legal expenses incurred in plaintiffs' derivative action.
The court in Western Fiberglass, supra, noted:
Mandatory indemnification, was enacted primarily to protect vindicated officers and directors from a refusal to indemnify when an adverse shift in management occurred. However, the Delaware statute does not limit application to that situation. Barrett, [Mandatory Indemnification of Corporate Officers and Directors, 29 Sw. L.J. 727 (1975)] concluded:
under [Delaware's] section 145(c) an insider who has been successful wholly or partially on a technical defense may demand and receive indemnification, including legal fees, notwithstanding the standards of conduct in (a) and (b) that must be met if the corporation chooses to indemnify. An underlying policy for the enactment of an indemnification provision favorable to management was the desire to attract incorporators for the state of Delaware.
[789 P.2d at 37-38.]
Under N.J.S.A. 14A:3-5(1)(a), the term "corporate agent" is defined as "any person who is or was a director, officer, employee or agent of the indemnifying corporation." Muhlstock, of course, is not a Southbridge director, officer, or employee, and his only basis for mandatory indemnification under N.J.S.A. 14A:3-5(4) arises if he is properly categorized as Southbridge's "corporate agent" under N.J.S.A. 14A:3-5(1)(a).
In Western Fiberglass, a corporation sold equipment to a third party that apparently failed to make the necessary payments for that equipment. 789 P.2d at 34-36. Foreclosure loomed, and the corporation discovered that its security interest had not been perfected and that another creditor's lien was superior. Ibid.
The corporation brought a malpractice action against its outside legal counsel for not perfecting the security interest. The lawyers evidently had played a minimal role in the negotiations with the third party and did not represent the corporation at the closing on the purchase loan. Id. at 36. The lawyers and the corporation were found to be equally negligent, and this barred recovery against the lawyers under Utah law, where a recovering party's negligence must be less than that of the defendant. Ibid.
Asserting that they were acting as the corporation's "agent" in the security-interest matter, the lawyers requested that the *787 corporation indemnify them against their legal expenses in defending against the corporation's malpractice action pursuant to a statutory provision, Utah Business Corporation Act, § 16-10-4(2)(c), that has an obvious similarity to N.J.S.A. 14A:3-5(4).[2]Id. at 35-36.
The Utah Court of Appeals framed the issue on appeal as "[d]oes the word `agent' in the corporate indemnification provision of our statute include a law firm engaged by a corporation to render legal advice concerning a sale of corporate equipment?" It decided that question in the negative, determining that the lawyers were not the corporation's agent within the meaning of the controlling statute. Id. at 36-39. In doing so, it determined that:
[L]egislatures have implemented indemnity statutes so corporations can attract capable management executives, not competent attorneys at law. The statutes are designed to protect persons exercising corporate discretion and authority, not the attorneys those persons hire to give them legal advice. Based on public policy considerations, we conclude that ... [the lawyer] was not a corporate "agent" within the meaning of the statute.
[Id. at 38 (citations and footnote omitted).]
Western Fiberglass also found that the lawyers had not had "management authority" within the corporation and that, at the time of the closing with the third-party equipment buyers, they were "not exercising any corporate discretion or authority but [were] ... under the direction of [the corporation's] ... officers and agents." Id. at 39. At the same time, the Court of Appeals observed that under the controlling statute, the terms "director, officer, employee or agent" have "synonymous underlying meanings," and that the term "agent" "indicates persons operating on equal footing in the management authority of the corporation." Ibid. It concluded that the indemnification "statute is concerned with corporate personnel who exercise management discretion and who have authority to bind the corporation, not someone like ... [the lawyer] having any type of agency relationship with the corporation." Ibid.
Another instructive out-of-state decision is Channel Lumber, supra, where a corporation had retained lawyers as trial counsel to defend an action by the corporation's tenants. 93 Cal.Rptr.2d at 485. The defense was unsuccessful, and the corporation in turn unsuccessfully sued the lawyers for professional negligence. The trial court granted judgment for the lawyers and they sought indemnification as the corporation's agent under a California statute, Cal. Corp.Code § 317(d)[3], similar to N.J.S.A. 14A:3-5. Although the trial court granted judgment for the lawyers, the Court of Appeals reversed, with one dissent, concluding that:
when outside counsel (as opposed to in-house counsel) is retained by a corporation to represent it at trial and then is *788 sued by the corporation for allegedly committing legal malpractice while representing the corporation, outside counsel is a party to the malpractice suit by reason of his or her actions in the capacity of an independent contractor, not "by reason of the fact that [outside counsel] is or was an agent of the corporation," within the meaning and purposes [of the controlling statute.]
[Id. at 484 (quoting Cal. Corp.Code § 317(c) (West 1990)).]
The court analyzed the relationship between an outside trial lawyer and the corporate client and concluded essentially that the independent nature of the skilled services provided by such lawyers indicates that they are independent contractors, performing work that corporations cannot perform without the aid of such professionals. Id. 485-88. On the other hand, it also noted that the attorney-client relationship is plainly governed by principles of agency. Id. at 488.
Accordingly, the court opined that "in a broad and general sense, an outside attorney retained to represent a corporate client at trial is both an independent contractor and an agent," and "whether an outside trial attorney is an agent of his or her corporate client within the meaning of... [the statute] must be determined by reference to the purpose of the statute." Ibid.
The Court of Appeals in Channel Lumber further observed that the controlling statute "was enacted to encourage capable individuals to act for and in the place of the corporation by affording them indemnification for the expenses of defending against lawsuits to which they are made parties because they are agents of the corporation." Id. at 489. Thus, the statute
is an indemnity statute, not an attorney fee statute. The Legislature did not provide therein for an award of attorney fees whenever an agent is successful in litigation with a corporate principal. Rather, indemnification is limited to actions in which a person is involved "by reason of the fact that the person is or was an agent of the corporation."
[Id. at 488 (quoting Cal. Corp.Code § 317(c) (West 1990)).]
By so limiting a corporation's mandatory indemnification obligation, the statute
is intended not only to afford reasonable protection to corporate agents, but also to impose safeguards to protect shareholders by restricting indemnity to situations in which liability is sought to be imposed upon an individual by reason of the fact the person was an agent of a corporation, i.e., based upon acts or omissions in which, under general principles of agency law, the person was charged with acting for and in the place of the corporation.
[Id. at 489.]
The Court of Appeals concluded by determining that neither of these statutory purposes would be served by allowing an outside trial counsel to avail itself of mandatory statutory indemnity, because the lawyers had been sued for malpractice by the corporation for their "actions in the capacity of an independent contractor of the corporation, not for acts which, under principles of agency, are deemed to be those of the corporation." Ibid. Stated somewhat differently, the lawyers had been sued for malpractice because of their actions as legal professionals concerning the discovery violations, not for some action taken by them for and in place of the corporation. Ibid.[4] The court thus reversed *789 the order entered below and thereby denied indemnification to the lawyers, concluding that it would neither serve the statutory purpose of providing reasonable protection to an agent whose acts could be deemed to be those of the corporation nor protect shareholders from unnecessary indemnification expenses. Id. at 489-90.
Finally, we consider Fasciana, supra, where a lawyer served as outside counsel for a corporation. 829 A.2d at 164-66. A federal grand jury returned an indictment against the lawyer essentially alleging that he had conspired with certain corporation employees to defraud the corporation and had made material misrepresentations to third parties on behalf of the corporation as part of the illegal scheme. Id. at 165.
The corporation later filed a civil action against the lawyer asserting malpractice, negligence, and fraud, based on the allegation that questionable legal advice given to it by the lawyer was intended to advance the fraudulent scheme and that the lawyer allegedly made material misrepresentations to the third parties on behalf of the corporation. Id. at 166.
Thereafter, the lawyer filed an action seeking an advance of his legal expenses in the criminal and civil actions pursuant to a corporate bylaw that provided for such advance to the fullest extent permitted by a controlling statute. Id. at 167-68. The court interpreted Delaware's counterpart to N.J.S.A. 14A:3-5, Del.Code Ann. tit. 8, § 145, under which corporations are permitted "to afford advancement and indemnification rights to their agents," as well as to former directors, officers, and employees. Id. at 168 n. 24.
The Vice Chancellor framed the "key question" in Fasciana as "what definition of agent did the General Assembly intend to use in drafting § 145?" Id. at 168. The court noted that "attorneys are identified as common examples of agents" but refused to accept the lawyer's argument that "§ 145 was intended to be co-extensive with the broadest possible meaning of that term in colloquial American legal usage." Id. at 169.
Instead, the judge thought it "more likely that the General Assembly intended the term to be used in the more precise sense characteristic of its primary common law definition, which embraces the `essential' requirement that an agent have `the power to act on behalf of the principal with *790 third persons.'" Ibid. (footnote omitted). According to the court, § 145 has a "limited purpose" in light of the legislature's apparent belief "that corporations ought to be able to extend advancement and indemnification rights to outside contractors who acted on behalf of the corporation in dealings with third parties." Id. at 170 (footnote omitted).
With that limited purpose in mind, the court concluded:
[T]he General Assembly intended that the term agent be used in its most traditional senses as involving action by a person (an agent) acting on behalf of another (the principal) as to third parties.
....
By contrast, whether or not attorneys are sometimes loosely referred to [as] agents of their clients, there seems to be little to commend extending that loose appellation into the § 145 context. One can imagine many situations in which outside attorneys are engaged by corporations to provide specialized legal advice about a particular problem. That type of representation might simply involve the lawyer providing candid, confidential legal advice to the client to address a legal issue arising out of specific factual circumstances. In providing that advice, the lawyer is duty-bound to give his client her best legal judgment, applying appropriate standards of professional care. Indeed, in that capacity, the lawyer might well owe the obligations of a fiduciary to the client for obvious reasons, including that the attorney has been entrusted with the client's confidences in circumstances in which the client is entitled to repose confidence and trust. That this is so does not, it seems to me, make the lawyer the agent of the corporation in the sense that § 145 intends. If all that the attorney does is give the corporation confidential, private legal advice that is not intended for use with third-parties, the policy concerns of § 145 are not implicated and the dangers of applying an overly loose definition of agency quickly emerge.
Why? Because in a malpractice dispute between the corporation and the lawyer, the lawyer would, if deemed an agent and if the corporation had a not-uncommon bylaw providing mandatory advancement rights to agents, find himself able to fund his defense from the corporation's coffers. This is an odd result that is unlikely to have resulted from a specific retention agreement between a corporation and outside attorney, and is not one that § 145 should be construed as creating when the use of a more constrained and, indeed, traditional definition of agency can avoid that result.
[Id. at 170-72 (footnotes omitted).]
Thus rejecting any "overly loose definition" of the term "agent," Fasciana framed the remaining question as whether the lawyer "faces claims that involve his conduct as an agent for ... [the corporation] in dealing with third parties." Id. at 172. On the facts before it, the court answered this question, "[b]y and large," in the negative, stating that most of the allegations of fraud in the criminal and civil actions involved the lawyer's "misconduct in his capacity as a legal advisor" to the corporation. Id. at 172-73.[5]

*791 III
The rationale and result of the persuasive authorities that we have reviewed argue compellingly against determining that Muhlstock is a "corporate agent" entitled to statutory indemnification by Southbridge. We glean the following relevant factors from these other cases. As in those cases, Muhlstock was not cloaked with any management authority by his client, Southbridge, and he did not exercise managerial discretion on its behalf. Instead, Muhlstock acted in his role as outside counsel and provided legal advice to Southbridge, his corporate client. Also, Muhlstock was sued because of that advice and not because of any direct action by him on behalf of Southbridge concerning a third party.
Additionally, the legislative purpose apparently underlying N.J.S.A. 14A:3-5(4) would not be served if Muhlstock's indemnification is allowed to stand. The legislative history behind N.J.S.A. 14A:3-5 is sparse, but a "predominant object of the 1968 Revision [of the New Jersey statute] was to expand and render more flexible the powers and uses of corporations in the light of modern business convenience and practice, thereby to attract incorporators to this State." Roxbury State Bank v. The Clarendon, 129 N.J.Super. 358, 368, 324 A.2d 24 (App.Div.), certif. denied, 66 N.J. 316, 331 A.2d 16 (1974).
Plainly, this "predominant object" of the statute would not be served by an interpretation of N.J.S.A. 14A:3-5(1)(a) that expands the definition of "corporate agent" to include outside counsel who only give advice to a corporation and do not exercise authority or discretion on behalf of the corporation in relation to third parties. There is no basis rationally for concluding that incorporators would be attracted to a jurisdiction that requires a corporation to pay the legal expenses of retained counsel when the corporation sues that counsel for malpractice in rendering legal advice.
Similarly, the "purpose of indemnification [statutes like N.J.S.A. 14A:3-5(4)] is to encourage capable and responsible individuals to accept positions in corporate management, secure in the knowledge that expenses incurred by them in upholding their duties will be borne by the corporation." 13 Fletcher Cyclopedia of the Law of Private Corporations § 6045.10 (1995 Revised Volume, 1995). That purpose would not be served by indemnifying persons, like Muhlstock, whose purportedly indemnifiable litigation expenses do not arise out of their exercise of managerial authority on behalf of the corporation, but rather arose out of their role as outside counsel to the corporation, providing legal advice to corporate management. Plainly, Muhlstock's services did not involve the exercise of managerial authority or discretion on behalf of Southbridge or the representation of Southbridge in dealings with third parties. Instead, he was sued by Southbridge essentially for providing it with allegedly faulty legal advice concerning Pellosie's indemnification in the C & R action and for failing to disclose any knowledge about Pellogreen.
Nor would the statute's purpose necessarily be advanced in a situation such as the present one when, as counsel indicated at oral argument, the indemnification claim essentially is one for subrogation being pursued by the attorney's malpractice insurance carrier. Indeed, while corporations often obtain directors and officers insurance to assist in fulfilling their indemnification *792 obligations to those officials, by contrast outside professionals typically maintain their own coverage against professional liability. Thus, outside attorneys can look to that coverage rather than having to depend on corporate director and officers insurance.
Moreover, Muhlstock and Southbridge are engaged in separate occupations, and Muhlstock's occupation as a lawyer requires skills and professional accreditation that Southbridge did not possess and was therefore compelled to hire. The work performed by Muhlstock (the provision of legal advice to cooperative housing organizations) is not part of Southbridge's regular business. Thus, the ability to enter into the indemnification agreement and to hire Pellosie rested at all times with Southbridge. Muhlstock's role was only that of a legal advisor who provided a professional opinion concerning the matter.
With respect to the issue of control, it appears that Southbridge exercised very little control over Muhlstock's actions as a legal advisor, deferring to his professional opinion rather than directing him to form an opinion that comported with Southbridge's corporate requirements.
Even though Muhlstock did not function as Southbridge's trial counsel, his legal services for Southbridge were comparable in that he performed legal work that Southbridge was unable to provide itself: he provided legal advice to Southbridge concerning Pellosie's indemnification. Furthermore, Muhlstock was sued by Southbridge because of his provision of that legal advice and his alleged failure to disclose another matter.
Under the rationale of Channel Lumber, supra, Muhlstock is not eligible for mandatory indemnification because he was not acting for or in the place of Southbridge when he provided that legal advice. Instead, the provision of such advice was part of his function as an independent-contractor/outside counsel servicing a corporate client. Moreover, Muhlstock's position is different than that of an in-house counsel, a kind of "agent" which Southbridge virtually conceded at oral argument would have a stronger claim to being a "corporate agent" under the statute.
In the present case, Muhlstock was Southbridge's outside counsel, but he did not represent Southbridge in any litigation or negotiations with third parties pertinent to this case. Instead, with Southbridge's active encouragement, Muhlstock represented Pellosie in the C & R litigation, and he provided advice to Southbridge about Pellosie's indemnification agreement about that litigation.
To summarize, we conclude in light of the language of N.J.S.A. 14A:3-5(1)(a) and 14:3-5(4) and in view of the persuasive case law which has informed us, that the trial court erred in determining that Muhlstock was Southbridge's "corporate agent" and thus eligible for mandatory statutory indemnification. Rather, statutes such as N.J.S.A. 14A:3-5 are intended to provide indemnification to protect persons who exercise binding managerial authority and discretion on behalf of a corporation in matters involving third parties. They are not intended to be attorney's fees statutes nor to provide indemnification for outside legal counsel who only provide legal advice to the corporation without interaction with third parties on behalf of the corporation.
Accordingly, we reverse the order entered below granting indemnification for Muhlstock against the legal expenses he incurred in defending Southbridge's malpractice action against him.
Muhlstock's cross appeal contends that the trial court erred in denying his request for the payment of his expert's fees as part of the indemnification award against *793 Southbridge. Because Muhlstock is not entitled to indemnification, necessarily he is not entitled to be indemnified against his expert witness expenses.

IV
We reverse the order of indemnification. As a result, the issue as to expert witness expenses is moot.
NOTES
[1] The indemnification statutes in New Jersey and the other states to which we refer appear to have originated in Delaware law. In 1950, the American Bar Association's Committee on Corporate Laws of the Section of Corporation, Banking and Business Law ("Committee") published the Model Business Corporation Act ("1950 Model Act"). Model Bus. Corp. Act § 5, Official Comment at 218 (2d ed.1971). "In preparing the 1950 edition of the Model Act, the Committee deemed it important to provide for statutory indemnity and selected the Delaware statute as it then existed because of its brevity and simplicity." Ibid. In that manner, Del.Code Ann. tit. 8, § 122(10), became the source upon which the corresponding provisions of the 1950 Model Act, § 4(o), were based. See Model Bus. Corp. Act § 4(o), Official Comment at 146 (1960). This was Delaware's "original provision" respecting the indemnification of corporate officers and directors. Bishop, The Law of Corporate Officers and Directors, § 6.02 at 6. Thereafter, "the Committee in February 1967 approved a new section 4A to supplant section 4(o)" of the 1950 Model Act, and this new § 4A "was developed in consultation with the Delaware Corporation Law Revision Committee and is substantially identical with Section 145 of the new Delaware General Corporation Law of 1967," Model Bus. Corp. Act § 5 Official Comment at 218 (2d ed.1971), which among other things provided for the mandatory indemnification of directors, officers, employees, and agents of a corporation under certain circumstances. Del.Code Ann. tit. 8, § 145(c).

To summarize, the indemnification provisions in N.J.S.A. 14:3-5 are "derived from section 4A of the Model Act," N.J.S.A. 14:3-5 "Commissioners' Comment1968," which in turn were based on the Delaware statute. Additionally, the Utah mandatory indemnification provision, Utah Code Ann. § 16-10-4(2)(c), involved in Western Fiberglass, supra, 789 P.2d at 36, appears to have followed the Delaware pattern in that it applied to directors, officers, employees, and agents of a corporation. The California mandatory indemnification provision involved in Channel Lumber, supra, APSB Bancorp v. Grant, 26 Cal.App.4th 926, 31 Cal.Rptr.2d 736 (1994), and Katayama v. Interpacific Props., Inc., 236 Cal.Rptr. 108 (Ct.App.1987), appears also to have followed the Delaware pattern, at least loosely. Cal. Corp.Code § 317; see Bishop, supra, § 6.40 (discussing the California statute).
[2] The Utah statute reads, "[t]o the extent that a director, officer, employee, or agent of a corporation has been successful on the merits or otherwise in defense of any action, suit or proceeding referred to in Subsection (2)(a) or (b), or in defense of any claim, issue, or matter therein, he shall be indemnified against expenses, including attorneys' fees, which he actually and reasonably incurred in connection therewith."
[3] The California statute reads, "[t]o the extent that an agent of a corporation has been successful on the merits in defense of any proceeding referred to in subdivision (b) or (c) or in defense of any claim, issue, or matter therein, the agent shall be indemnified against expenses actually and reasonably incurred by the agent in connection therewith."
[4] Channel Lumber relied on another California appellate decision, APSB Bancorp, supra, which involved an accounting firm, not a law firm. 31 Cal.Rptr.2d at 737-38. In affirming the denial of indemnification, the court in APSB Bancorp determined that the statute:

allows indemnification for corporate "agents" sued for carrying out activities on behalf of a corporation within the common law meaning of agency, but not where the acts giving rise to the underlying suit arose out of retention of an independent contractor performing business for its own benefit, even though the activities may directly benefit the corporation.
[Id. at 737.]
The court also observed that the client, a bank, had "exercised very little control over" the accountants, and while the bank's "provision of workplace, employees, financial records and computers" to the accountant during audits tended to show that the accountant was the bank's agent, the "stronger case for a nonagency relationship is shown because the two parties are engaged in separate occupations, the work performed by ... [the accountant] is not part of ... [the bank's] regular business, the contractual nature of the engagements and the parties did not expressly create an agency relationship as evidenced by the engagement letters." Id. at 740.
Although another California case, Katayama, supra, appears to support Muhlstock's position in this appeal, it is unpersuasive. See 236 Cal.Rptr. at 109. While the opinion appears in the California Reporter, the California Supreme Court evidently "ordered that the opinion be not officially published." Id. at 108 n. *. We thus take its value as precedent to be negligible and mention it only because the parties refer to it in their briefs.
[5] The court found, however, that there was one exception to its conclusion that the lawyer did not face charges or claims "arising out his conduct as an agent" of the corporation, which involved the criminal charges and civil claims arising out of the material misrepresentations the lawyer allegedly made to third parties on behalf of the corporation and in furtherance of the fraudulent scheme. Id. at 173-74. The court determined that, because the lawyer functioned as the corporation's agent in dealing with those third parties, he was entitled to an advancement of his legal expenses to defend the specific charges and claims arising out of that agency. Ibid.