891 A.2d 664 (2006)
383 N.J. Super. 256
Salvatore A. VERGOPIA, Janet Vergopia, and Edward A. Vergopia, Plaintiffs,
v.
Corey E. SHAKER, William C. Muller, Jr., Joseph Shaker, James Christ, Domenic Colasacco, C. Michael Jacobi, Louis I. Margolis, all individually and/or as Directors of Hometown Auto Retailers, Inc., Hometown Auto Retailers, Inc., Westwood Lincoln Mercury Sales, Inc., Steven Shaker, Edward D. Shaker, Joseph Shaker as Trustee of Richard Shaker Voting Trust, Sadie Nejaime, Janet Shaker, Edward Shaker, Paul Shaker, Rose Shaker, William C. Muller, Sr., Defendants-Respondents/Cross-Respondents, and
Stephen A. Zelnick, Defendant-Appellant/Cross-Claimant.
Universal Underwriters Group, Plaintiff,
v.
The Chubb Group of Insurance Companies; Federal Insurance Company; Salvatore A. Vergopia; Janet Vergopia; Edward A. Vergopia; Corey E. Shaker; William C. Muller, Jr.; Joseph Shaker; James Christ; Domenic Colasacco; C. Michael Jacobi; Louis I. Margolis, individually and/or as Directors of Hometown Auto Retailers, Inc.; Westwood Lincoln Mercury Sales, Inc.; Steven Shaker; Edward D. Shaker; Joseph Shaker, as Trustee of Richard Shaker Voting Trust; Sadie Nejaime; Janet Shaker; Paul Shaker; Rose Shaker; and William C. Muller, Sr., Defendants.
Superior Court of New Jersey, Appellate Division.
Argued December 7, 2005.
Decided February 22, 2006.
*665 Dennis T. Smith, Hackensack, argued the cause for appellant/cross-claimant (Pashman Stein, attorneys; Mr. Smith, of counsel and on the brief).
Eric M. Grant, Waterbury, argued the cause for respondents/cross-respondents (Rogut, McCarthy, Troy and Yamin & Grant, attorneys; Diane Dabulas, of counsel; Mr. Grant, of counsel and on the brief).
Before Judges WEFING, WECKER and GRAVES.
The opinion of the court was delivered by
WEFING, P.J.A.D.
Defendant Stephen A. Zelnick appeals from a trial court order dismissing his cross-claim in which he sought indemnification for certain counsel fees and expenses he had incurred. After reviewing the record in light of the contentions advanced on appeal, we reverse.
*666 Zelnick is an attorney admitted to the practice of law in New York and a member of the firm Morse, Zelnick, Rose & Lander. Plaintiffs Salvatore A. Vergopia and his son Edward A. Vergopia had been the chairman and vice-president, respectively, of an automobile dealership known as Westwood Lincoln-Mercury Sales, Inc., located in Emerson, New Jersey. Plaintiff Janet Vergopia is the wife of Salvatore. In 1998, Westwood consolidated its business with that of several other automobile dealerships to form a new entity, Hometown Auto Retailers, Inc. Hometown is a Delaware corporation that operates automobile dealerships in five states. Its stock is publicly traded on the NASDAQ Exchange. Because its stock is publicly traded, Hometown must comply with the various rules and regulations of the Securities and Exchange Commission ("SEC"). Zelnick and his firm served as outside counsel and SEC counsel in connection with the formation of Hometown and thereafter.
Several years after the formation of Hometown, dissatisfaction arose between the Vergopias and other members of Hometown. Zelnick was assigned the task of informing the Vergopias that the decision had been made to terminate them from their positions with Hometown. According to the Vergopias, Zelnick informed them that the decision was motivated by a desire to save money. On February 7, 2001, the Vergopias filed suit alleging, inter alia, breach of employment agreements.
A press release dated February 9, 2001, was prepared to inform the investing public of the termination and litigation. Zelnick, as counsel to Hometown, reviewed the press release prior to its dissemination and publication and made suggestions as to revisions and changes. In addition, an associate in Zelnick's firm was directed to prepare the Form 8-K required to be filed with the SEC.
Initially, the Vergopias did not join Zelnick as a defendant to their litigation. The Vergopias, however, amended their complaint several times. In the third amended complaint, filed in March 2003, they joined Zelnick as a defendant, asserting against him claims of libel and intentional infliction of emotional distress. These claims rested upon Zelnick's involvement with the contents of the February 9, 2001, press release announcing the termination of the Vergopias and their lawsuit against Hometown. This press release stated in pertinent part:
Hometown Auto Retailers (Nasdaq NM: HCAR) today announced that it has dismissed Salvatore Vergopia as chairman and Edward Vergopia as vice-president-fleet operations. Hometown has terminated their employment contracts, for cause, and replaced Salvatore Vergopia as general manager of Hometown's Westwood Lincoln-Mercury dealership. According to the company, Hometown suffered significant losses at its Westwood operations during calendar year 2000 as a result of the sale and transfer of title of limousines (worth approximately $850,000) to a defaulting customer and as a result of Westwood's management having set unrealistic residual values on the recourse sales of automobiles. Hometown believes these actions arose from mismanagement and dereliction of duty by the dismissed officers and, together with other improper actions by these officers, provided a legal basis for their dismissals.
In response to their dismissal and the termination of their employment contracts, the dismissed officers and Janet Vergopia filed a civil complaint with the Superior Court of New Jersey, Bergen County, against Hometown, its directors, *667 officers and certain major stockholders alleging breach of their employment agreements and the original combination agreement among the Hometown constituent dealerships and other wrongful conduct, including age discrimination and breach of fiduciary duty and seeking reinstatement, compensatory, consequential and punitive damages, in an unspecified amount, back pay and front pay, injunctive and other legal and equitable relief. Hometown intends to vigorously defend the action brought by the Vergopia's and will seek recovery from the Vergopia's for their misconduct.
"Westwood Lincoln-Mercury is one of the highest volume dealerships in the New York region and proper management of its sale and credit procedures, inventory levels and day-to-day operations is critical to Hometown," said Corey Shaker, president and chief executive officer of Hometown. "We felt dismissal of the Vergopia's was necessary and appropriate to meet these goals."
When neither Hometown nor its insurers would provide a defense or indemnification for Zelnick, he retained his own counsel to represent him against the claims of the Vergopias. He also asserted a cross-claim against Hometown for indemnification. Ultimately, Zelnick successfully moved for summary judgment against the Vergopias, and the claims against him were dismissed.
Thereafter, Zelnick's cross-claim for indemnification was submitted to the trial court on stipulated facts, together with an agreement that the matter was controlled by Delaware law, the state of Hometown's incorporation. Zelnick has appealed from the trial court's determination that his claim against Hometown for indemnification should be dismissed. Zelnick is not pursuing on appeal a claim against Hometown's insurers.
Zelnick's appeal calls for an examination of Hometown's corporate documents and the relevant provisions of the Delaware statutes. Section 145(a) of Title 8 of the Delaware Code provides in pertinent part:
A corporation shall have power to indemnify any person who was or is a party ... to any ... action, suit or proceeding ... by reason of the fact that the person is or was a director, officer, employee or agent of the corporation... against expenses (including attorneys' fees), . . . actually and reasonably incurred by the person....
[Del. Code Ann. tit. 8, § 145(a).]
Article X of Hometown's Certificate of Incorporation provides:
(a) Right to Indemnification. Each person who was or is made a party or is threatened to be made a party to or [who] is involved in any action, suit or proceeding, whether civil, criminal, administrative or investigative (hereinafter a "proceeding"), by reason of the fact that he or she, or a person of whom he or she is the legal representative, is or was a director or officer, of the Corporation or is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation or of a partnership, joint venture, trust or other enterprise, including service with respect to employee benefit plans, whether the basis of such proceeding is alleged action in an official capacity as a director, officer, employee or agent or in any other capacity while serving as a director, officer, employee or agent, shall be indemnified and held harmless by the Corporation to the fullest extent authorized by the Delaware General Corporation Law.
*668 This is amplified within Hometown's bylaws, Section 10.1 of which provides:

Indemnification. The Corporation shall indemnify its directors and officers, and may indemnify its employees and agents, in accordance with and to the full extent permitted by the laws of the State of Delaware as in effect from time to time, if any such person (and the heirs and legal representatives of such person) is made or threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative, by reason of the fact that such person is or was, as the case may be, a director, officer, employee or agent of the Corporation or any constituent corporation absorbed in a consolidation or merger or serves or served as such with another corporation, partnership, joint venture, trust or other enterprise at the request of the Corporation or any such constituent corporation.
As the trial court correctly recognized, the critical question before it was whether Zelnick was joined as a party by the Vergopias "by reason of the fact that" Zelnick was an officer or agent of Hometown. If Zelnick was not named as a defendant "by reason of the fact that [he] was a[n] officer... or agent" of Hometown, Zelnick would fall beyond the scope of the statute and not be entitled to indemnification.
Before proceeding to a detailed analysis of the questions presented, we note the standard of review which guides us. The trial court's factual findings "are considered binding on appeal when supported by adequate, substantial and credible evidence." Rova Farms Resort v. Investors Ins. Co. of Am., 65 N.J. 474, 484, 323 A.2d 495 (1974). The trial court's conclusions of law, however, stand on a different footing. "A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty v. Twp. Comm. of the Twp. of Manalapan, 140 N.J. 366, 378, 658 A.2d 1230 (1995).

I
The trial court, in its oral opinion, properly distinguished between the position of corporate officer and corporate agent for purposes of indemnification. We concur in its determination that Zelnick's status as assistant secretary to Hometown was purely coincidental to his involvement in reviewing the press release and supervising the preparation and filing of the Form 8-K, the activities which triggered the suit against him by the Vergopias.
Initially, we note our agreement with Zelnick's contention that resolution of the issue of his entitlement to indemnification as an officer of Hometown is not confined to an examination of the four corners of the pleadings filed by the Vergopias against him. "[T]he mere form of the underlying complaint is [not] dispositive of [the] right to indemnification." Heffernan v. Pac. Dunlop GNB Corp., 965 F.2d 369, 374 (7th Cir.1992) (applying Delaware law). Delaware courts have expressed the same view.
We are aware that the pleadings in the MAH action named VonFeldt as a defendant in his capacity as an officer and employee of SNC, rather than as an SNC director. This distinction is immaterial. In keeping with the aversion to undue formalism, we decline to engage in the hyper-technical exercise of trying to measure the "scope" of Stifel Financial's request against the various roles VonFeldt filled at SNC.
[VonFeldt v. Stifel Fin. Corp., 714 A.2d 79, 85 (Del.1998) (holding plaintiff, who had served as a director of a wholly-owned subsidiary, did so at the request *669 of the parent and was entitled to indemnification under § 145(a)).]
Merely eschewing formalism, however, does not lead to the conclusion that Zelnick is entitled to indemnification by reason of the fact that he served as an officer of Hometown.
Zelnick's duties as assistant secretary to the corporation are set forth in its by-laws. Section 5.9 of Hometown's by-laws state that an assistant secretary "[i]n the absence of the Secretary ... shall perform the duties of the Secretary." It defines the duties of the Secretary in the following manner:
The Secretary shall, when requested, attend meetings of the Board of Directors and the stockholders and shall record all votes and the minutes of all proceedings in a book to be kept for that purpose and shall, when requested, perform like duties for all Committees of the Board of Directors. He shall attend to the giving of notice of all meetings of the stockholders and special meetings of the Board of Directors and Committees thereof; he shall have custody of the corporate seal and, when authorized by the Board of Directors, shall have authority to affix the same to any instrument and, when so affixed, it shall be attested by his signature or by the signature of the Treasurer or an Assistant Secretary or an Assistant Treasurer.
He shall keep and account for all books, documents, papers and records of the Corporation except those for which some other officer or agent is properly accountable. He shall have authority to sign stock certificates and shall generally perform all the duties appertaining to the office of Secretary of a corporation.
Those duties are entirely unrelated to the review of a press release prior to its distribution and the filing of required forms with the SEC. Zelnick need not have been an assistant secretary to have engaged in these activities.
Zelnick stresses that the Vergopias alleged during the course of motion practice that he had been personally involved in the decision by Hometown to remove the Vergopias from their positions, and he was forced to defend himself against that allegation. Indeed, the presence of that assertion was one of the factors that led the trial court earlier to deny Zelnick's motion to dismiss for lack of jurisdiction.
That the Vergopias may have contended that Zelnick was personally involved in the decision to terminate them is, however, immaterial to whether Zelnick was joined as a defendant to this action by reason of the fact that he was an officer of Hometown. He need not have been an officer of Hometown to have participated in that decision-making process, if indeed he did so. His status as a defendant in this litigation was, in consequence, unrelated to his status as assistant secretary of Hometown. The claims of the Vergopias against Zelnick were not made "by reason of the fact" that Zelnick was an officer of Hometown. The trial court correctly concluded that Zelnick's status as an officer of Hometown did not entitle him to indemnification in the context of this case.

II
We turn now to the closer question whether Zelnick is entitled to indemnification under the theory that he was a defendant in the Vergopia litigation by reason of the fact that he was an agent of Hometown. The trial court concluded he was not and entered judgment for Hometown. We are unable to agree.
Within its oral opinion, the trial court stressed the view that the Delaware indemnification statute should be narrowly construed. Our review, however, convinces us that the trial court erred when it proceeded from the basis that the statute *670 should be given a narrow construction. Rather, as one commentator has noted, "[a] survey of the history of corporate indemnification law in the state of Delaware reveals the General Assembly's intent to expand, rather than limit, the availability of indemnification to corporate actors." Micah John Schreurs, Comment, VonFeldt v. Stifel Financial Corp.: Clarifying the Scope of Delaware Corporate Indemnification Law, 25 J. Corp. L. 161, 174 (1999). Another has referred to the statute's "broad, flexible indemnification powers" and that
[t]he invariant policy of section 145 is to promote the desirable end that corporate officials will resist what they consider unjustified suits and claims, secure in the knowledge that their reasonable expenses will be borne by the corporation they have served if they are vindicated. Beyond that, its larger purpose is to encourage capable persons to serve as corporate directors, secure in the knowledge that expenses incurred by them in upholding their honesty and integrity as directors will be borne by the corporation they serve.
[Rodman Ward, Jr., et al, Folk on Delaware General Corporation Law §§ 145.1-.2 (2001) (quotation marks and footnotes omitted).]
This legislative intent has been expressed in the statute's "generous parameters." Grove v. Daniel Valve Co., 874 S.W.2d 150, 156, (Tex.Ct.App.1994) (applying Delaware law). "Both the language and the purpose of Delaware's indemnification statute support interpreting its scope expansively." Heffernan, supra, 965 F.2d at 375.
In the course of its oral opinion, the trial court expressed the concern that if the term "agent" were broadly construed, it could ultimately encompass so many persons, with the resultant exposure of corporate funds to so many claims, that a corporation would retreat from offering indemnification at all. The trial court thus determined that a person seeking indemnification under section 145(a) as an agent had to have been authorized to act and to have acted on behalf of the corporation with third parties. It concluded that Zelnick did not deal with third parties in the course of the work at issue here and, thus, did not qualify as an agent for purposes of section 145(a).
In support of its view that one seeking indemnification under Section 145(a) as an agent must have had dealings with third parties, the trial court cited the decision of the Delaware Court of Chancery in Fasciana v. Elec. Data Sys. Corp., 829 A.2d 160 (Del.Ch.2003). We consider Fasciana to be distinguishable, however.
In that case, plaintiff Fasciana was an attorney who represented FACS Inc. and its shareholders in connection with the sale of FACS to the defendant, Electronic Data Systems Corp. ("EDS"). Fasciana, 829 A.2d at 164. After the sale was completed, Fasciana continued to perform legal services for EDS. Ibid. He was thereafter indicted for certain actions in connection with the sale of FACS. Id. at 164-65. In addition, EDS sued him civilly, alleging malpractice and fraud on his part, together with other theories, all of which were premised on the same factual contentions as underlay the criminal prosecution. Id. at 166. In seeking advancement of his litigation expenses, Fasciana contended that his actions as an attorney satisfied the statutory term, "agent," and thus entitled him to the advancement. Id. at 168.
The Delaware court rejected his argument, in large measure. In the course of its opinion, it noted the anomaly that would flow from adopting Fasciana's argument: a corporation suing an attorney for malpractice could be compelled to fund the defense of the alleged wrongdoer. Id. at 172. The court stated:

*671 Although the parties have cited no statutory text or legislative history that bears precisely on this policy balance, it strikes me as more likely that the General Assembly conceived of the inclusion of agents within § 145 as having a fairly limited purpose. In my view, what is most probable is that the General Assembly believed that corporations ought to be able to extend advancement and indemnification rights to outside contractors who acted on behalf of the corporation in dealings with third parties. That is, the General Assembly intended that the term agent be used in its most traditional sense as involving action by a person (an agent) acting on behalf of another (the principal) as to third parties.
[Id. at 170-71 (footnotes omitted).]
The court further expressed the view that an attorney retained to provide specialized private legal advice about a particular problem should not be considered the agent of the corporation. It stated, "If all that the attorney does is give the corporation confidential, private legal advice that is not intended for use with third-parties, the policy concerns of § 145 are not implicated and the dangers of applying an overly loose definition of agency quickly emerge." Id. at 171. The trial court here stressed that analysis to support its conclusion that Zelnick was not an agent of Hometown.
We are not so presumptuous as to conclude that the Delaware court erred in its analysis of the intent of the Delaware legislature in deciding Fasciana. Our research, nonetheless, has disclosed at least two reported opinions involving Delaware law in which the courts (one of which was a Delaware court) did not place such a restrictive interpretation upon the term "agent." Cambridge Fund, Inc. v. Abella, 501 F.Supp. 598, 614 (S.D.N.Y.1980) (applying Delaware law and finding that the investment adviser to a mutual fund was an agent of the mutual fund for purposes of indemnification under section 145); Merritt-Chapman & Scott Corp. v. Wolfson, 321 A.2d 138, 141-42 (Del.Super.Ct.1974) (finding that an individual who had served as chairman and president of a wholly-owned subsidiary of MCS and managed private financing and lending activities of MCS qualified as an employee or agent of MCS, entitling him to indemnification for his counsel fees in defending a criminal prosecution).
We are, however, satisfied that the concerns expressed in Fasciana do not bear in the present matter. Hometown makes no complaint about the nature of Zelnick's performance; it is only the Vergopias who alleged they were aggrieved. The reservations expressed by the Fasciana court might come into play if Zelnick's alleged involvement had been restricted, for example, to responding to a request for legal advice as to Hometown's rights under its contract with the Vergopias, and Hometown subsequently complained that his advice was negligently given. In such a context, Zelnick's advice could possibly be seen as intended for Hometown alone. Here, however, Zelnick, by reviewing and commenting upon the proposed press release, which was intended for the widest possible dissemination, gave advice that was intended to be used with third-parties. Similarly, Zelnick knew that the Form 8-K, the preparation of which he supervised and for which he was responsible, would be available to the investing public upon its filing with the SEC. Finally, we note that according to the Vergopias, it was Zelnick who was dispatched to advise them of their termination. According to the July 2003 certification of Salvatore Vergopia, Zelnick gave as the reason for their termination the need to save money and yet had involvement in the press release which stated the termination was for cause.
*672 This court has recently had occasion to consider whether, under New Jersey law, an outside attorney may be an agent of the corporation for purposes of indemnification. Cohen v. Southbridge Park, Inc., 369 N.J.Super. 156, 848 A.2d 781 (App.Div. 2004). In that case, Stephen C. Muhlstock was an attorney retained as outside counsel by Southbridge, a corporation the purpose of which was to provide residences for shareholders in a cooperative apartment building. Id. at 158, 848 A.2d 781. Shareholders in the corporation brought a derivative action that alleged conspiracy and fraud in the hiring of a new property manager; in that same action, they alleged Muhlstock had committed malpractice in the course of his representation of the corporation. Id. at 159, 848 A.2d 781. The claims against the attorney were ultimately dismissed, and he sought indemnification on the basis that he was the agent of Southbridge. Id. at 160, 848 A.2d 781. The trial court agreed the attorney was an agent of Southbridge and entitled to indemnification; we reversed. Id. at 158, 848 A.2d 781.
In the course of our opinion, we noted approvingly the construction adopted by the Fasciana court of the term "agent." Id. at 169-171. We noted the following factors in concluding that Muhlstock's actions did not constitute the actions of an agent of Southbridge: his actions were restricted to the provision of legal advice to his client Southbridge, and it was that advice which led to his being sued. Id. at 171. Further, we were satisfied that requiring a corporation to pay the legal expenses of its retained counsel when it sues that counsel for malpractice would not advance the statute's objective. Id. at 171-72. This was particularly so in light of the fact that the claim for indemnification was presented by the attorney's malpractice carrier, in subrogation. Id. at 172-73. Finally, we noted that the attorney and corporation were engaged in entirely separate occupations, that is, the role of the attorney in providing legal advice was not part of the corporation's regular business. Id. at 173.
We are satisfied that the factors we cited in Cohen do not preclude indemnification to Zelnick. As we have noted, Zelnick was not sued by Hometown for malpractice for the legal advice he provided to it. Additionally, because Zelnick was not sued for malpractice, there is no question presented here that indemnification by Hometown would provide an unwarranted windfall to Zelnick's malpractice carrier. Finally, in our judgment, Zelnick's involvement with Hometown's preparation of its press release may be viewed as constituting at least some involvement on his part with Hometown's regular business.
We conclude our analysis by returning to Fasciana, supra, 829 A.2d 160, for we consider the opinion instructive as to the close nature of the analysis required when considering a request for indemnification or advancement. The court in Fasciana, after setting forth its view as to proper construction of agent in section 145, noted that both the criminal and civil actions that were pending against Fasciana contained allegations that Fasciana had made certain misrepresentations to third parties. Id. at 173. The court concluded that these allegations did involve conduct with third-parties and Fasciana was entitled to an advancement with regard to them.[1]Id. at 173-74.
Here, in our judgment, a similarly close analysis of the allegations presented against Zelnick in the course of the Vergopia litigation support a conclusion, for the reasons we have cited, that Zelnick's role extended to and impacted upon third parties. *673 Thus, even within the parameters set forth by Fasciana, supra, 829 A.2d 160, he may be deemed an agent of Hometown and entitled to indemnification for the legal expenses he incurred.
Because the trial court concluded Zelnick was not entitled to indemnification, it never reached the issue whether the expenses he had incurred were reasonable. We thus remand this matter to the trial court for further proceedings in that regard.
Reversed and remanded for further proceedings. We do not retain jurisdiction.
NOTES
[1] It is immaterial to the analysis that Fasciana sought an advancement, as opposed to indemnification.